The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CM, et al. | Dayspring Christian Academy, et al. |

| (b) County of Residence of First Listed Plaintiff    Lancaster | County of Residence of First Listed Defendant    Lancaster |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| James Munnelly, Esq., Sand and Saidel, P.C. 113 S. 21st Street, Philadelphia, PA 19103, 215-851-0200 | John P. Morgenstern, Esq., O'Hagan Meyer 1717 Arch Street Suite 3910, Philadelphia, PA 19103 215-461-3300 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☒ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 835 Patent - Abbreviated | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | New Drug Application | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | Act of 2016 | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Act | | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 720 Labor/Management | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | Exchange |
| | Medical Malpractice | | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | Income Security Act | **FEDERAL TAX SUITS** | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | 26 USC 7609 | Agency Decision |
| | ☒ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        Another District
        *(specify)*

☐ 6  Multidistrict
        Litigation -
        Transfer

☐ 8  Multidistrict
        Litigation -
        Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 12101 et seq; 29 U.S.C. § 794

Brief description of cause:
Americans with Disabilities Act; Section 504 of the Rehabilitation Act of 1973

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
    UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*       JUDGE _____       DOCKET NUMBER _____

DATE
January 2, 2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CM, individually and through his Parents, CM Senior and JM | : | |
| | : | |
| *Plaintiff,* | : | CIVIL ACTION |
| vs. | : | |
| | : | |
| DAYSPRING CHRISTIAN ACADEMY, DANIEL | : | |
| STONE, LS (former student), SANDY ABEL, JEFF | : | |
| FUNK, JANICE MARTINO-GOTSHALL, | : | |
| MATT LAPP, DR. MICHAEL R. MYERS, ART | : | |
| REMINGTON, JEFF SMOKER, AND KEVIN | : | |
| ZIMMERMAN | : | |
| *Defendant.* | : | |

## COMPLAINT

**I.      Parties:**

1)      Plaintiff, CM is 19 years of age, born January 5, 2006.  CM was a minor at the time in which the incidents occurred that are the subject of this Complaint.

2)      CM is disabled.  He has medical diagnoses of Autism and Attention Hyperactivity Deficit Disorder and presents as a person with disabilities.  Additionally, CM was born with hydrocephalus.

3)      CM was identified as a student with disabilities by his home school district, Hempfield School District.  In a reevaluation dated November 9, 2023, CM received educational classifications of Autism, Specific Learning Disability, and Speech and Language.  DCA was provided with this reevaluation report.

4)      CM's parents, CM Senior and JM, have power of attorney over CM, including but not limited to the powers to pursue claims and litigation on his behalf.

5)    Defendant, Dayspring Christian Academy ("DCA") is a small Christian private school in Lancaster County, Pennsylvania.

6)    Defendant, Daniel Stone, is the current Headmaster of DCA, former Principal of DCA ("Headmaster Stone" or "Principal Stone").  This Complaint is being filed against Headmaster Stone in his capacity as headmaster of DCA and in his individual capacity.

7)    Defendant, LS, born in 2007, was a student at DCA in CM's class and the son of Headmaster Stone and was a minor at the time in which the incidents occurred that are the subject of this complaint.

8)    Defendants, Sandy Abel, Jeff Funk, Janice Martino-Gotshall, Matt Lapp, Dr. Michael R. Myers[1], Art Remington, Jeff Smoker, and Kevin Zimmerman, are all members of DCA's Board of Trustees ("board members").  This Complaint is being filed against each board member in their capacity as board members and in their individual capacities.

9)    Upon information and belief, DCA applied for and received federal funds through the Paycheck Protection Program ("PPP") administered by the Small Business Administration pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020).

10)    Upon information and belief, DCA received PPP loans during 2020-2021 and was in the repayment period during the time the incidents occurred that are the subject of this Complaint.

11)    Upon information and belief, these federal PPP funds were used to pay the salaries of DCA staff, including administrators, teachers, and personnel responsible for C.M.'s

---

[1] Dr. Michael R. Myers is DCA's founder, DCA's former headmaster, and father-in-law to Daniel Stone and grandfather of LS. Dr. Myers resigned from Headmaster at the end of the 2020-2021 school year. Dr. Myers is now only on the board of trustees. Daniel Stone became Headmaster after Dr. Myers resigned.

supervision and education, and to maintain school operations during the period in which the discrimination and abuse occurred.

12)     DCA also participates in Pennsylvania's Educational Improvement Tax Credit ("EITC") and Opportunity Scholarship Tax Credit ("OSTC") programs.  Participation in those programs requires it to abide by state and federal anti-discrimination laws.  24 Pa. Stat. § 20-2011-B.

13)     Although DCA purports to have a Christian-based curriculum, it is not a religious entity, a religious organization, or an entity controlled by a religious organization.

14)     DCA operates as a place of public accommodation under the ADA.  DCA holds itself out to the public as an educational institution providing secular education services, conferring diplomas recognized by the Commonwealth of Pennsylvania, and preparing students for secular university admission.

15)     DCA is not controlled by a specific church or religious order but is governed by an independent Board of Trustees.

16)     DCA is not a place of worship.

17)     DCA's admissions policies and employment practices function commercially in the marketplace of private education.

**II.     Jurisdiction and Venue:**

18)     This Court has original jurisdiction over this Action pursuant to 28 U.S.C. § 1331 because this case raises federal questions under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA) of 1973.

19)     This Court has supplemental jurisdiction over the state claims raised in this

Action pursuant to 28 U.S.C. § 1367 because they are related to the federal question claims and

form part of the same case or controversy.

20)     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §

1391(b) because a substantial part of the events or omissions giving rise to these claims occurred

in Lancaster County, Pennsylvania, which is located within this judicial district, and because

Defendant DCA is located within this district.

### III.    Additional Facts Supporting Liability:

21)     CM attended DCA Academy from 6th through 12th grades, graduating in the

spring of 2025.   At all times during his enrollment at DCA, CM was a student with disabilities.

22)     The DCA administration was aware of CM's disabilities.  He was provided

services for his disabilities through a program that DCA calls a P139 program.

23)     P139 is a program specific to DCA, named after Psalm 139.  There was a P139

classroom called "Daybreak" in which they had a modified curriculum. In DCA's handbook, it

describes Daybreak as follows, in relevant part:

> Students who receive services in this program have mild to moderate
> learning needs. The focus of this program is to support and/or
> modify the regular educational curriculum, or to replace subjects
> within the regular educational curriculum to allow maximum
> success for the student.

24)     Students with more academic needs (like CM) spent more time in that classroom

than students with fewer needs.

25)     CM also had a P139 plan, a written document specifying that he would be

receiving a modified curriculum with replacement subjects in English/Literature and math, along

with both social and academic goals, specifically designed instruction and intervention, and testing modifications.

26)     During his time at DCA, CM was subjected to relentless bullying and harassment by his peers due to his disability.  Much of this persistent abuse came from Headmaster Stone's son, LS.

27)     CM and LS were in the same grade class, and knew each other the entire time that CM was enrolled, starting in 6th grade.

28)     LS also spent some time in the P139 classroom, for reasons unknown to CM and his parents.

29)     During his time at DCA, CM was subject to the following by LS, including but not limited to:

a.   LS often called CM a "sped" and "retard" throughout his time at DCA. Additionally, he would frequently stab CM with pencils and other objects leaving marks.

b.   LS cornered CM and whipped him with a belt in a bathroom at DCA. This horrendous whipping is on video and occurred on or about January 2023.

c.   Fellow DCA students cornered CM and poked objects at his anus.  LS was involved in this incident.  This cruel form of sexual harassment (referred to as "rounding") against CM occurred twice on DCA's campus, on or about January 2023 to May 2023.

30)     Unfortunately, these above-described incidents should not have happened to CM.

31)     LS had been a known bully to the DCA Administration and board members for many years.

32)     For many years prior to and including the 22-23 school year, parents and students submitted complaints to DCA administration and board members regarding LS for making sexualized comments in class, name calling, verbal harassment, assault, and pushing students in bathroom stalls while they urinated, among other forms of bullying and harassment.

33)     Many of LS's victims were students in the P139 classroom, with known disabilities to DCA's administration. Many are protected under the Americans with Disabilities Act (ADA), including at least one other student with autism, like CM.

34)     Prior to and during the 2022-2023 school year, DCA administrators and board members were aware that much of LS's bullying and harassment was directed towards students with disabilities in the P139 classroom, and that those students were being bullied because of their disability.

35)     Administrators of DCA, including Headmaster Stone and former Headmaster, board member Michael Myers, responded to these complaints of LS with inappropriate remarks such as "boys will be boys" and "what do you want me to do about it?"

36)     Through various emails to parents of students at DCA, Headmaster Stone made clear that he was aware of bullying issues in LS's grade class.

37)     For example, on October 18, 2018, then-Principal Stone sent an email to the parents of 6th grade boys (both CM and LS's grade year at the time). In that email, Principal Stone describes with detail that he is aware of allegations including the following direct quotes:

   a.  Hallway--bumping into each other, kicking/tripping, poking, shoving into or against lockers, etc.

   b.  Lunch table--stealing food, "roasting" or "burning" (insults)

   c.  Bathroom--shoving into urinals, kicking stall doors open, "pantsing"

38)     In the October 18, 2018 email, Principal Stone appears to know who was engaging in these behaviors, and either knew or should have known that it was his own son.  For example, Headmaster Stone referred to the possible offenders as "boys."  He stated that he was in favor of "letting boys be boys," but apparently thought this conduct was "problematic in the school setting."

39)     In the October 18, 2018 email, Principal Stone stated that there will be consequences from teachers for this type of behavior, and he listed those consequences, which included allowing boys to go to the bathroom only one at a time, teachers walking students to their lockers and to next classes, students eating lunch separately, conducting parent conferences, and issuing detentions and in-school suspensions.

40)     Unfortunately, Principal Stone never made changes to class schedules for lunches, never ordered more hallway supervision, and never implemented policies for the staff to limit students, especially boys, in the school bathroom.

41)     If Principal Stone had simply kept his promises to parents in his October 18, 2018 email, much of the severe bullying CM endured could have been prevented.

42)     Unfortunately, bullying issues in CM and LS's class endured for years later, and Headmaster Stone continued to be aware of those issues, yet took no action to rectify these issues.

43)     On January 26, 2022, Headmaster Stone wrote an email to parents in the 9th grade class (CM and LS's grade year at the time), claiming "I believe wholeheartedly that all of our children are under direct assault from Satan and his demons."  He also offered a prayer meeting with the 9th grade parents stating: "While all of our children are on Satan's agenda for

destruction, I want to call special attention today to our 9th grade children and ask that you as parents join with us in coming against these attacks, in Jesus' name!"

44)    On January 30, 2022, Headmaster Stone sent another email clarifying the reasons why he was calling the prayer meeting, which included what he acknowledged had been going on at DCA in the 9th grade class, in direct quotes:

    a.   Immature and/or inappropriate humor,

    b.   General lack of kindness, compassion and consideration towards each other,

    c.   General attitude of ambivalence or apathy towards school. Sometimes, this just looks like apathy. Sometimes it leads to lack of integrity. Sometimes it affects academics and sometimes it has to do with following expectations (being in uniform, being prepared to class, completing work on time, etc.),

    d.   Challenging teachers' authority.

45)    Other than a prayer meeting, Headmaster Stone offered no other solutions to rectify bullying concerns, and in fact took none, including failing to discipline known bullies.

46)    By failing to act on known bullying of students, especially students with disabilities, DCA was deliberately indifferent to the "strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Meagley v. City of Little Rock*, 639 F.3d 384, 388 (8th Cir. 2011) (*quoting Barber v. Colorado*, 562 F.3d 1222,1228-29 (10th Cir. 2009)).

47)    DCA's policies of inaction resulted in CM enduring humiliating bullying, harassment, and sexual harassment due to his disability.

48)    In May of 2023, LS himself bragged to two girls about the "rounding," claiming that another student turns out the lights in the bathroom, pins students down and puts things in their anus.

49)    One of the girls who LS bragged to claimed to have seen CM emerge from the bathroom disheveled as if this happened to him. Eventually these incidents and concerns of the girls were brought to the administration at a later date.

50)    The DCA administration's initial response to these allegations was to accuse the girls who reported them of gossiping. However, eventually, CM was interviewed by the DCA administration who confirmed that he was "rounded" on campus by DCA students. At a later date, LS was identified as one of the perpetrators.  It was also revealed at this time that there were other instances of bullying, such as the whipping that CM endured in January of 2023, which also occurred on DCA's campus.

51)    At a later date, LS admitted to participating in the "rounding" of CM and apologized to CM's parents by way of reading a prepared statement on his phone.

52)    LS and other offenders of the "rounding" incidents withdrew from DCA a couple weeks after these incidents came to light.

53)    However, Headmaster Stone allowed LS to return to DCA for extracurricular events that CM was attending.  Headmaster Stone did so, without proper notification to CM or his parents ahead of time, further adding to CM's trauma.

54)    Due to the severe, persistent, and pervasive bullying that CM endured at DCA, CM must see a therapist frequently and attends counseling services at the Center for Autism and Developmental Disabilities.  CM's experiences at DCA are a continuing topic at his sessions.

55)      In a counseling session in May of 2025, CM reported to his counselor that he has

contemplated taking his own life.  This was in the same session in which CM first revealed the

trauma that he faced at DCA due to the harassment he endured by LS.

**Count I - CM v. DCA; Violations of the ADA, 42 U.S.C. § 12101 et seq:**

56)      Plaintiff incorporates by reference the preceding paragraphs as if fully set forth

herein.

57)      To establish claims under the ADA, a plaintiff must demonstrate that: (1) he has a

disability, or was regarded as having a disability; (2) he was "otherwise qualified" to participate

in school activities; and (3) he was "denied the benefits of the program or was otherwise subject

to discrimination because of [his] disability." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587

F.3d 176, 189 (3d Cir. 2009).

58)      CM has a disability, specifically autism, in which DCA was aware of through its

P139 program and plan for CM.

59)      CM was "otherwise qualified" to participate in school activities.

60)      CM was denied the benefits of the educational program or was otherwise subject

to discrimination because of his disability due to the severe, persistent and pervasive bullying

and harassment he endured by his peers, such as being called names like "sped" and "retard,"

and enduring humiliation by being whipped by a belt and "rounded."

61)      CM did not obtain the full benefits of the supports and modifications that DCA

provided CM through his P139 plan due to his disabilities of which DCA was aware.

62)      If a plaintiff seeks compensatory damages as a remedy for violations of the ADA,

it is not enough to demonstrate only that the plaintiff has made out the prima facie case outlined

above. *S.H. v. Lower Merion School District,* 729 F.3d 248, 261 (3d Cir 2013). He or she must also demonstrate that the aforementioned discrimination was intentional. *Id*. A showing of deliberate indifference satisfies that standard. *Id*. at 263. To satisfy the deliberate indifference standard, a plaintiff "must present evidence that shows both: (1) *knowledge* that a federally protected right is substantially likely to be violated . . . , and (2) *failure* to act despite that knowledge." *Id.* at 265 (citing *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

63)    DCA administrators and board members had knowledge that a federally protected right is substantially likely to be violated due to the number of complaints of bullying and harassment committed by LS against other students in the P139 classroom, which mainly comprised students with disabilities.

64)    DCA administrators and board members knew that there were students in the P139 classroom who were being bullied and harassed by LS specifically due to their disabilities.

65)    DCA failed to remedy the known bullying and harassment being committed by LS against students in the P139 classroom, which resulted in CM being discriminated against.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendant, and award the following relief:

a)    Declaratory Judgment that Defendant's actions, policies, and practices violated Plaintiff's rights under the ADA, 42 U.S.C. 12101 et seq.;

b)    Compensatory damages in an amount to be determined at trial for all economic losses suffered as a result of Defendant's discriminatory conduct;

c)    Compensatory damages for non-economic losses, including but not limited to emotional distress, pain and suffering and humiliation;

d)    Punitive damages;

e)  An order requiring Defendant to implement appropriate policies, practices and training to prevent future violations of the ADA at DCA;

f)  Pre-judgment and post-judgment interest as permitted by law;

g)  Reasonable attorneys' fees and costs incurred in this action as provided by the ADA, 42 U.S.C. § 12205;

h)  Such other relief as this Court deems appropriate.


**Count II – CM v. DCA; Violations of Section 504 of the Rehabilitation Act of 1973 29 U.S.C. §794**

66)    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

67)    To establish claims under § 504 of the Rehabilitation Act, a plaintiff must demonstrate that: (1) he has a disability, or was regarded as having a disability; (2) he was "otherwise qualified" to participate in school activities; and (3) he was "denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009).

68)    As a recipient of Federal Financial Assistance, DCA is subject to Section 504 of the Rehabilitation Act and may not discriminate against individuals with disabilities.

69)    CM had a disability, specifically autism, in which DCA was aware of through its P139 program and plan.

70)    CM was "otherwise qualified" to participate in school activities.

71)    CM was denied the benefits of the educational program or was otherwise subject to discrimination because of his disability due to the severe, persistent and pervasive bullying

and harassment he endured by his peers, such as being called names like "sped" and "retard," and enduring humiliation by being whipped by a belt and "rounded."

72)    CM did not obtain the full benefits of the supports and modifications that DCA provided CM through his P139 plan that CM received due to his disabilities in which DCA was aware.

73)    If a plaintiff seeks compensatory damages as a remedy for violations of the Rehabilitation Act of 1973, it is not enough to demonstrate only that the plaintiff has made out the prima facie case outlined above. *S.H. v. Lower Merion School District,* 729 F.3d 248, 261 (3d Cir 2013). He or she must also demonstrate that the aforementioned discrimination was intentional. *Id*. A showing of deliberate indifference satisfies that standard. *Id*. at 263.  To satisfy the deliberate indifference standard, a plaintiff "must present evidence that shows both: (1) *knowledge* that a federally protected right is substantially likely to be violated . . . , and (2) *failure to* act despite that knowledge." *Id*. at 265 (citing *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

74)    DCA administrators and board members had knowledge that a federally protected right is substantially likely to be violated due to the number of complaints of bullying and harassment committed by LS of other students in the P139 classroom, which mainly comprised students with disabilities.

75)    DCA administrators and board members knew that there were students in the P139 classroom who were being bullied and harassed by LS specifically due to their disabilities.

76)    DCA failed to remedy the known bullying and harassment being committed by LS against students in the P139 classroom, which resulted in CM being discriminated against.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendant, and award the following relief:

i)   Declaratory Judgment that Defendant's actions, policies, and practices violated Plaintiff's rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, by discriminating against Plaintiff on the basis of disability;

j)   Compensatory damages in an amount to be determined at trial for all economic losses suffered as a result of Defendant's discriminatory conduct;

k)   Compensatory damages for non-economic losses, including but not limited to emotional distress, pain and suffering and humiliation;

l)   Punitive damages;

m)  An order requiring Defendant to implement appropriate policies, practices and training to prevent future violations of Section 504 of the Rehabilitation Act of 1973;

n)   Pre-judgment and post-judgment interest as permitted by law;

o)   Reasonable attorneys' fees and costs incurred in this action pursuant to 29 U.S.C. § 794a;

p)   Such other relief as this Court deems appropriate.

**Count IV - CM v. All Defendants; Negligence**

77)    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

78)    Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law requiring the actor to conform to a certain standard of

conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. *Rabutino v. Freedom State Realty Co., Inc.*, 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002).

79)     School administrators and board members have a duty to ensure a safe environment for all school children, including vulnerable children with disabilities like CM. DCA's code of conduct states that the purposes of the standards in it are to "cultivate a healthy campus atmosphere, free of distractions that impede students from living a healthy Christian life." DCA's disciplinary policy states that "[e]ach teacher provides a positive, inspiring classroom atmosphere that will encourage children to exemplify the character of Jesus."

80)     Additionally, DCA has a bullying policy, stating that DCA "is committed to being a bully-free zone."

81)     DCA administrators and board members failed to adhere to the required standard of care by failing to remedy known bullying and harassment, and by failing to take reasonable steps to curb these known issues, such as limiting students leaving class, securing bathrooms, and other items suggested by Headmaster Stone (then Principal Stone) in his October 18, 2018 email to parents.

82)     Additionally, the failures of DCA administrators and board members to remedy known repeated bullying and harassment rises to the level of gross negligence.

83)     In failing to remedy known repeated bullying and harassment by LS, DCA administrators (Headmaster Stone) and board members acted outside their official capacity and for personal reasons in an effort to not punish and to protect LS due to him being the headmaster's son and grandson of Dr. Myers, a board member and founder of the school.

84)     Additionally, Defendants' failures to remedy known bullying rises to the level of gross negligence (a "flagrant" or "gross deviation" from the ordinary negligence standard. *Feleccia v. Lackawanna Coll.*, 654 Pa. 324, 353 (2019).

85)     CM was harmed due to DCA's failures to take reasonable steps to remedy known bullying and harassment occurring in the school building, and by failing to have appropriate control over DCA's students and the school building generally.

86)     CM suffered damages for which all defendants are joint and severally liable.  CM must now see a therapist frequently and has contemplated taking his own life over the harassment he endured by LS that occurred at DCA.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendant, and award the following relief:

a)   Compensatory damages in an amount to be determined at trial for all economic losses suffered as a result of Defendant's negligent conduct, including but not limited to medical expenses;

b)   Non-economic damages for pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other intangible losses;

c)   Punitive damages;

d)   Pre-judgment and post-judgment interest as permitted by Pennsylvania law;

e)   Costs of suit and reasonable attorney's fees incurred in this action as may be permitted by Pennsylvania law;

f)   Such other relief as this Court deems appropriate.

**Count IV – CM v. DCA; Breach of Contract**

87)    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

88)    To state a claim for breach of contract under Pennsylvania law, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa 427 (2016).

89)    In Pennsylvania, "the relationship between a private educational institution and an enrolled student is contractual in nature. . . ." *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. 1999).

90)    The contract between a private institution and a student is comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution. *Id.*

91)    DCA's Student Handbook was posted on DCA's website.  Each year, DCA required families to review and attest that they reviewed it in order to continue enrollment for their child.

92)    Each year of CM's enrollment at DCA, CM and his parents were required to read and sign an attestation that they reviewed the DCA student handbook and agreed to its provisions.

93)    DCA's code of conduct (incorporated in its Student Handbook) states that the purposes of the standards in it are to "cultivate a healthy campus atmosphere, free of distractions that impede students from living a healthy Christian life."  DCA's disciplinary policy states that

"[e]ach teacher provides a positive, inspiring classroom atmosphere that will encourage children to exemplify the character of Jesus."

94)     Additionally, DCA has a bullying policy (also incorporated in its student handbook), stating that DCA "is committed to being a bully-free zone."

95)     DCA's bullying policy provides that DCA will discipline students who engage in bullying.

96)     DCA failed to remedy known bullying in accordance with its Student Handbook, particularly bullying of LS, and failed to enforce its bullying policies.

97)     In failing to remedy known bullying and enforce its policies, DCA violated provisions of its Student Handbook.

98)     CM suffered damages as a result of DCA failing to remedy known bullying in accordance with its Student Handbook.

99)     Additionally, CM had a P139 plan, a written document that was agreed to between CM and his parents and DCA.

100)    CM did not obtain the full benefits of the supports and modifications that DCA provided CM through his P139 plan that CM received due to his disabilities in which DCA was aware due to the severe, persistent and pervasive bullying he experienced at DCA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendant, and award the following relief:

  a)  Monetary damages in an amount to be proven at trial, including but not limited to compensatory and punitive damages;

  b)  Prejudgment and post-judgment interest as permitted by Pennsylvania law;

c) Costs of suit and reasonable attorney's fees incurred in this action as may be permitted by Pennsylvania law;

d) Such other relief as this Court deems appropriate.

**Count V - CM v. LS; Battery**

101) Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

102) An actor is subject to liability to another for battery if a) he acts intending to cause a harmful or offensive contact with the person…and b) an offensive contact with the person of the other directly or indirectly results. Restatement (Second) of Torts § 18.

103) LS committed battery against CM by whipping him with a belt in the school bathroom, which was in fact harmful and offensive contact of CM.

104) LS committed battery against CM by participating in an act where CM was "rounded," where CM was cornered and objects were poked at his anus, which was in fact harmful and offensive contact of CM.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendant, and award the following relief:

a) Compensatory damages in an amount to be determined at trial for all injuries suffered, including but not limited to emotional distress, mental anguish, fear, apprehension, and other psychological harm;

b) Punitive damages;

c) Prejudgment and post-judgment interest as permitted by Pennsylvania law;

d)  Costs of suit and reasonable attorney's fees incurred in this action as may be permitted by Pennsylvania law;

e)  Such other relief as this Court deems appropriate.

**Count VI - CM v. LS; Assault**

105)  Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

106)  The tort of assault occurs whenever an actor intentionally causes an imminent apprehension of a harmful or offensive bodily contact. *Sides v. Cleland,* 436 Pa. Super. 618, 648 A.2d 793 (1994) (citing Restatement (Second) of Torts § 21).

107)  CM was placed in imminent apprehension of harmful or offensive bodily contact when he was whipped by LS with a belt in the school bathroom.

108)  CM was placed in imminent apprehension of harmful or offensive bodily contact when he was "rounded," where CM was cornered and objects were poked at his anus, incidents in which LS was a participant.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendant, and award the following relief:

f)  Compensatory damages in an amount to be determined at trial for all injuries suffered, including but not limited to emotional distress, mental anguish, fear, apprehension, and other psychological harm;

g)  Punitive damages;

h)  Prejudgment and post-judgment interest as permitted by Pennsylvania law;

i)  Costs of suit and reasonable attorney's fees incurred in this action as may be

permitted by Pennsylvania law;

j)  Such other relief as this Court deems appropriate.


Dated:  January 2, 2026                        Respectfully submitted,

                                               _____
                                               James J. Munnelly, Esquire
                                               jmunnelly@sandsaidel.com
                                               SAND & SAIDEL, P.C.
                                               113 S. 21st Street,
                                               Philadelphia, PA 19103
                                               Attorney for CM

## <u>VERIFICATION</u>

CM hereby states that he verifies that the statements made in his COMPLAINT are true and correct to the best of his knowledge, information, and belief, after reasonable inquiry. The undersigned understands that the statements herein are made subject of the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsifications to authorities.

_CM_____

CM

Dated: _12/30/25_____

## **VERIFICATION**

CM, Senior hereby states that he verifies that the statements made in this COMPLAINT are true and correct to the best of his knowledge, information, and belief, after reasonable inquiry. The undersigned understands that the statements herein are made subject of the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsifications to authorities.

_____

CM, Senior

Dated: _12/30/25_

## VERIFICATION

JM hereby states that she verifies that the statements made in this COMPLAINT are true and correct to the best of his knowledge, information, and belief, after reasonable inquiry. The undersigned understands that the statements herein are made subject of the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsifications to authorities.

_____

JM

Dated: 12/30/25

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Lancaster County, Pennsylvania</u>

---

***RELATED CASE IF ANY:*** Case Number: <u>2:26-cv-00007</u>    Judge: _____

1.  Does this case involve property included in an earlier numbered suit?    Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.  Federal Question Cases:*

☐  1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐  2.  FELA
☐  3.  Jones Act-Personal Injury
☐  4.  Antitrust
☐  5.  Wage and Hour Class Action/Collective Action
☐  6.  Patent
☐  7.  Copyright/Trademark
☐  8.  Employment
☐  9.  Labor-Management Relations
☒  10.  Civil Rights
☐  11.  Habeas Corpus
☐  12.  Securities Cases
☐  13.  Social Security Review Cases
☐  14.  Qui Tam Cases
☐  15.  Cases Seeking Systemic Relief  **see certification below**
☐  16.  All Other Federal Question Cases. *(Please specify):*_____

*B.  Diversity Jurisdiction Cases:*

☐  1.  Insurance Contract and Other Contracts
☐  2.  Airplane Personal Injury
☐  3.  Assault, Defamation
☐  4.  Marine Personal Injury
☐  5.  Motor Vehicle Personal Injury
☐  6.  Other Personal Injury *(Please specify)*:_____
☐  7.  Products Liability
☐  8.  All Other Diversity Cases:  *(Please specify)*
          _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.