**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **C.M., individually and through his Parents, CM SENIOR and JM,** | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 5:26-CV-00007-JMG |
| v. | : : | |
| **DAYSPRING CHRISTIAN ACADEMY, et al.,** | : : : | |
| Defendants. | : : | |

## ORDER

AND NOW, this _____ day of _____ 2026, upon consideration of the Motion to Dismiss of Defendants, Dayspring Christian Academy, Daniel Stone, Sandy Abel, Jeff Funk, Janice Martino-Gotshall, Matt Lapp, Dr. Michael R. Myers, Art Remington, Jeff Smoker, and Kevin Zimmerman (hereinafter "Defendants"), and any response thereto, it is hereby **ORDERED** that Defendants' Motion is **GRANTED** and Plaintiff's Complaint is **DISMISSED** with prejudice.

**BY THE COURT:**

_____

J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| C.M., individually and through his Parents, CM SENIOR and JM, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 5:26-CV-00007-JMG |
| v. | : : | |
| DAYSPRING CHRISTIAN ACADEMY, et al., | : : : | |
| Defendants. | : : | |

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Dayspring Christian Academy, Daniel Stone, Sandy Abel, Jeff Funk, Janice Martino-Gotshall, Matt Lapp, Dr. Michael R. Myers, Art Remington, Jeff Smoker, and Kevin Zimmerman (hereinafter "Defendants"), hereby move this Court, pursuant to Rules 12(b)(6) and 12(f), and Rule 8 of the Federal Rules of Civil Procedure, by and through their attorneys, O'Hagan Meyer, PLLC, to dismiss Plaintiff's Complaint, on the following grounds:

1. **ADA - Religious Organization Exemption.** Plaintiff's ADA claim must be dismissed because Dayspring qualifies as a religious organization categorically exempt from Title III coverage. 42 U.S.C. § 12187; See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 226 (3d Cir. 2007); Dipietro v. Archbishop Wood High Sch., 711 F. Supp. 3d 488, 494 (E.D. Pa. 2024).

2. **ADA - No Available Relief.** Even if the exemption did not apply, Plaintiff's ADA claim still fails because Title III authorizes only prospective injunctive relief, not the monetary damages Plaintiff seeks (see Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 433 (3d Cir. 2003)), and Plaintiff, having already graduated, lacks standing to pursue injunctive relief. See Abadi v. Target Corp., No. 23-1050, 2023 U.S. App. LEXIS 15036, at *4 (3d Cir. June 16, 2023).

3. **Rehabilitation Act - No Federal Financial Assistance.** Plaintiff's Section 504 claim must be dismissed because according to publicly-available documents, Dayspring did not receive federal financial assistance during the relevant time period: its PPP loan was

forgiven in December 2020, years before the operative incidents, and participation in Pennsylvania's state tax credit programs does not constitute receipt of federal financial assistance. See Dipietro, 711 F. Supp. 3d at 493-94; Martin v. Del. Law Sch. of Widener Univ., 625 F. Supp. 1288, 1302 (D. Del. 1985).

4. **Rehabilitation Act - No Available Relief.** Plaintiff's Section 504 claim independently fails because he has not pleaded the intentional discrimination or deliberate indifference required for compensatory damages (see S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 261 (3d Cir. 2013) and D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 269 (3d Cir. 2014)), punitive damages are categorically unavailable under Section 504 (see Barnes v. Gorman, 536 U.S. 181, 187-88 (2002)), and Plaintiff lacks standing to pursue prospective injunctive relief. Shaika v. Gnaden Huetten Mem'l Hosp., No. 3:15-0294, 2015 U.S. Dist. LEXIS 87478, at *19-20 (M.D. Pa. July 7, 2015).

5. **ADA and Section 504 — No Causal Connection to Disability.** Both federal claims independently fail because Plaintiff has not alleged that he was denied benefits or subjected to discrimination *by reason of his disability*, as required under both statutes. 29 U.S.C. § 794(a); 42 U.S.C. § 12132; see also C.M. v. Pemberton Twp. High Sch., No. 16-9456, 2017 U.S. Dist. LEXIS 11434, at *17-18 (D.N.J. Jan. 27, 2017).

6. **Preempted State Law Claims.** Because Plaintiff's state law claims arise from the same alleged discriminatory conduct, the Court should hold that they are preempted by applicable federal discrimination law. See Auteri v. VIA Affiliates, No. 22-3384, 2023 U.S. Dist. LEXIS 193831, **16-17 (E.D. Pa. October 30, 2023); Weirich v. Horst Realty Corp., LLC, No. 07-CV-871, 2007 U.S. Dist. LEXIS 50923, *4 (E.D. Pa. July 11, 2007).

7. **Supplemental Jurisdiction.** Because all federal claims must be dismissed, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims for negligence and breach of contract. 28 U.S.C. § 1367(c)(3); see Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000).

8. **Rule 8(a)/Rule 12(f).** The Complaint should be dismissed or, in the alternative, certain paragraphs stricken, because it is replete with conclusory, vague, and immaterial allegations not connected to any cause of action, and contains impertinent and scandalous matter. Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 12(f); see also Bartol v. Barrowclough, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017).

**WHEREFORE**, Defendants respectfully request that this Honorable Court grant its

Motion to Dismiss Plaintiff's Complaint and enter the attached proposed Order.

Dated: March 9, 2026                    Respectfully submitted,

                                        **O'HAGAN MEYER, PLLC**

                            BY:    */s/ Hillary B. Weinstein*
                                   John P. Morgenstern, Esquire
                                   Elizabeth A. Castillo, Esquire
                                   Hillary B. Weinstein, Esquire
                                   PA ID Nos: 80014/332138/209533
                                   Three Logan Square
                                   1717 Arch Street, Suite 3910
                                   T: 215-461-3300
                                   F: 215-461-3311
                                   JMorgenstern@ohaganmeyer.com
                                   ECastillo@ohaganmeyer.com
                                   Hweinstein@ohaganmeyer.com

## TABLE OF CONTENTS FOR MEMORANDUM OF LAW

I. FACTUAL AND PROCEDURAL HISTORY ...........................................................2

II. STANDARD OF REVIEW ...............................................................................2

III. ARGUMENT ................................................................................................3

    A. Plaintiff's ADA Claims Should be Dismissed Because Dayspring is Exempted as a Religious Organization and because Plaintiff Cannot Recover any Damages under this Claim. 3

        i. Dayspring Qualifies as a Religious Organization Under the ADA Exemption. ...................3

        ii. Plaintiff Cannot Recover Damages Under Title III of the ADA and Does Not Have Standing to Prosecute His Claim for any Future Injunctive Relief. .........................................8

    B. Plaintiff's Claim Pursuant to the Rehabilitation Act Should be Dismissed Because Dayspring Does Not Receive Federal Financial Assistance. .......................................................9

        i. PPP Loans Do Not Create Continuing Obligations Under the Rehabilitation Act .............10

        ii. State Tax Credit Programs Do Not Constitute Federal Financial Assistance ...................11

    C. Plaintiff Fails to State any Claim for Relief Under the Rehabilitation Act. ..........................12

        i. Plaintiff Fails to Plead Intentional Discrimination or Deliberate Indifference Required for Compensatory Damages ...........................................................................................12

        ii. Punitive Damages Are Not Available Under the Rehabilitation Act.................................15

        iii. Plaintiff Lacks Standing to Pursue Prospective Injunctive Relief Under the Rehabilitation Act ...............................................................................................................16

    D. Plaintiff's Federal Claims Also Fail Because He has not Alleged Discrimination by Dayspring Because of his Disability. .......................................................................................16

    E. Plaintiff's Duplicative State Law Claims are Preempted by Federal Discrimination Claims, or in the alternative, the Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims ...............................................................................17

    F. Plaintiff's Complaint Violates Rule 8(a) Due to Failure to Plead in a Clear and Concise Manner. .................................................................................................................19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| C.M., individually and through his Parents, CM SENIOR and JM, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 5:26-CV-00007-JMG |
| v. | : : | |
| DAYSPRING CHRISTIAN ACADEMY, et al., | : : : | |
| Defendants. | : : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Dayspring Christian Academy, Daniel Stone, Sandy Abel, Jeff Funk, Janice Martino-Gotshall, Matt Lapp, Dr. Michael R. Myers, Art Remington, Jeff Smoker, and Kevin Zimmerman (hereinafter "Defendants"), by and through their attorneys, O'Hagan Meyer, PLLC, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and 8(a). Defendants seek dismissal of Plaintiff's claims on the following grounds:

- Plaintiff's ADA claim should be dismissed because Dayspring is exempt as a religious organization, monetary damages are unavailable under Title III, and Plaintiff lacks standing to seek injunctive relief;
- Plaintiff's Section 504 claim should be dismissed because Dayspring did not receive federal financial assistance during the relevant period; and Plaintiff cannot recover compensatory, punitive damages, or injunctive relief;
- Both federal claims independently fail because Plaintiff has not alleged that any discrimination was caused by his disability;
- Plaintiff's state law claims for negligence and breach of contract are preempted by applicable federal discrimination law, or in the alternative, the Court should decline supplemental jurisdiction over state law claims; and
- Certain paragraphs should be stricken as scandalous and impertinent under Rule 12(f), and/or the Complaint dismissed for violating Rule 8(a).

1

## I.    FACTUAL AND PROCEDURAL HISTORY

CM, individually and through his parents ("Plaintiff"), alleges he was abused and sexually harassed by LS, a former student and others, while a student at Dayspring Christian Academy. (See Doc. 1 ("Compl."), generally.) Dayspring is a private, Christian school. (Compl., ¶ 5.) Plaintiff brings claims against Dayspring under the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and also under state law for breach of contract against Dayspring, and for negligence against Dayspring and the other individual defendants. (Compl., Counts I-VI.)[1] [2]

Plaintiff's allegations of abuse and harassment took place during his enrollment at Dayspring from sixth to twelfth grades, spanning approximately 2018 through 2025. (Compl., ¶¶ 21, 29-30, 37, 43.)

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a plaintiff's complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Acosta v. Democratic City Comm., 288 F. Supp. 3d 597, 621 (E.D. Pa. 2018). Although the Court must accept all well-pleaded facts as true and draw reasonable inferences in favor of the plaintiff, it need not accept legal conclusions masquerading as facts. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). The court may also consider "… matters of public record." Fuller v. Sch. Dist. of Phila., No. 25-2952, 2025 U.S. Dist. LEXIS 180820, at *1 (E.D. Pa. Sep. 16, 2025) (citing Pension

---

[1] The Complaint mis-labels both the negligence claim and the breach of contract claim as "Count IV." (Compl., ¶¶ 77-86, 87-100.)

[2] Plaintiff also brings state law claims of assault and battery against LS, a former student of Dayspring. Defendant LS is represented by separate counsel.

Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). Also, when there is a document "integral to or explicitly relied upon in the complaint," it may also be considered as there is no concern of lack of notice to the plaintiff. Id. (citing Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).)

To prevail on claims under both the ADA and Section 504 of the Rehabilitation Act, a plaintiff must show that he (1) has a disability, (2) sought services from a federally funded entity, (3) was otherwise qualified to receive those services, and (4) was denied those services because of his disability. Chambers v. Sch. Dist. Of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d. Cir. 2009). Section 504 additionally requires that the defendant receive federal financial assistance. 29 U.S.C. § 794(a). Otherwise, both statutes are interpreted under the same standards and may be addressed together. Chambers, 587 F.3d at 189.

### III.    ARGUMENT

#### A.    Plaintiff's ADA Claims Should be Dismissed Because Dayspring is Exempted as a Religious Organization and because Plaintiff Cannot Recover any Damages under this Claim.

##### i.    Dayspring Qualifies as a Religious Organization Under the ADA Exemption.

The ADA does not apply to "religious organizations or entities controlled by religious organizations." Dipietro v. Archbishop Wood High Sch., 711 F. Supp. 3d 488, 494 (E.D. Pa. 2024) (citing 42 U.S.C. § 12187; PGA Tour, Inc. v. Martin, 532 U.S. 661, 689 n.51 (2001) ("Congress expressly exempted . . . religious organizations or entities from Title III [of the ADA]'s coverage.") This exemption "is very broad…even when a religious organization carries out activities that would otherwise make it a public accommodation, the religious organization is exempt from ADA coverage." Marshall v. Sisters of the Holy Family of Nazareth, 399 F. Supp. 2d 597, 605-06 (E.D.

Pa. 2005) (citing 28 C.F.R. Part 36, Appendix B.) The Third Circuit applied a nine-factor test to determine whether entities meet this exemption, in <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 226 (3d Cir. 2007). This Court recently applied the test in <u>Dipietro v. Archbishop Wood High Sch.</u>, 711 F. Supp. 3d at 494. The <u>LeBoon</u> factors are:

> (1) Whether the entity operates for a profit;
> (2) Whether it produces a secular product;
> (3) Whether the entity's articles of incorporation or other pertinent documents state a religious purpose;
> (4) Whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue;
> (5) Whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees;
> (6) Whether the entity holds itself out to the public as secular or sectarian;
> (7) Whether the entity regularly includes prayer or other forms of worship in its activities;
> (8) Whether it includes religious instruction in its curriculum, to the extent it is an educational institution; and
> (9) Whether its membership is made up by coreligionists.

<u>LeBoon</u>, 503 F.3d at 226. In <u>LeBoon</u>, the Circuit cautioned: "not all factors will be relevant in all cases, and the weight given each factor may vary from case to case." <u>Id.</u> at 227.

Leboon involved a Jewish community center. In deeming it to be a "religious organization," the court placed significant weight on the defendant's nonprofit status, explicitly religious mission statements, open espousal of its religious beliefs, close ties to local religious leaders, financial support from other religious organizations, and adherence to religious practices. <u>Dipietro</u>, 711 F. Supp. At 494-495 (citing <u>id.</u> at 227-29.) "These characteristics . . . taken together, clearly point[ed] to the conclusion that the [defendant] was primarily a religious organization." <u>Id.</u> at 229.

Here, an examination of Dayspring's "characteristics" from its publicly available documents demonstrates that its purpose and character are primarily religious. As with <u>Leboon,</u>

Dayspring is also a nonprofit educational institution.[3] Dayspring's publicly available handbook also confirms that Dayspring is a 501(c)(3) organization. (See https://www.dayspringchristian.com/wp-content/uploads/2025/09/Family-Student-Handbook-25-26-2.pdf (the "Handbook").) The Court should consider the Handbook in connection with this Motion because Plaintiff himself quotes the Handbook directly, relies on it as the operative contract for his breach of contract claim, and alleges that he and his parents were required to sign it. (Compl., ¶¶ 23, 91-94.) A document "integral to or explicitly relied upon in the complaint" may be considered on a motion to dismiss without converting it to one for summary judgment. Skolas, 770 F.3d at 249; Fuller, 2025 U.S. Dist. LEXIS 180820, at *1.

Dayspring's mission, as set forth on its publicly-filed IRS Form 990, is expressly religious: "TO OPERATE A PRIVATE CHRISTIAN SCHOOL FOR KINDERGARTEN THROUGH GRADE TWELVE." Its website also explicitly declares religious purposes: "The mission of Dayspring Christian Academy, through the Principle Approach, is to partner with families and churches in equipping students to: Acknowledge the Lordship of Jesus Christ in every area of life; Demonstrate a biblical worldview; Become citizens of excellence in Christian character and scholarship; [and] Restore America's biblical foundation." (See https://www.dayspringchristian.com/about/our-vision-history/.) The school explicitly rejects educational neutrality: "Education is not neutral, as such it is either man-centered or God-centered. Secular classrooms today elevate man attributing all advancement to man's efforts. The Principle

---

[3] Dayspring's most recent filed tax return states that it is exempt from income tax as a "501(c)(3)" organization. The return is publicly available at: https://projects.propublica.org/nonprofits/organizations/232833032/202523049349302327/full. As noted above, at the motion to dismiss stage, courts are permitted to consider "matters of public record." See Fuller, 2025 U.S. Dist. LEXIS 180820, at *1.

Approach classroom teaches students to see God's Hand moving to fulfill His plans and purposes - making God the center of all things, giving Him, not man, the glory." (See https://www.dayspringchristian.com/academics/.) The website states that "every class at Dayspring Christian Academy begins with God's Word." (See https://www.dayspringchristian.com/about/our-vision-history/.)

Dayspring's Handbook states that it "was established . . . to be a clear representation of the Biblical philosophy," partners with churches, and requires parents to attend "Bible-believing" churches. (Handbook, p. 5, 13, 21.) The Handbook also mandates that "[t]eachers must be born again Christians and attend a local Christian church" and must meet "the character qualifications as outlined in I Timothy 3:1-7." (Id., p. 17.) The discipline philosophy describes teachers as "represent[ing] the Lord Jesus Christ in a ministry of love and encouragement to their students." (Handbook, p. 48.) The school's Headmaster is described as the "Spiritual and Instructional Leader of the School." (Handbook, p. 18.) The school holds itself out as sectarian at every level. The school is "geared" to "[e]ncourage the acceptance of Christ as Savior and develop a love for God through His Word, " to "restore the light of Biblical reasoning, guiding a generation back to the godly path," and to "[p]rovide a Bibliocentric and Christ-saturated education for the children of Christian parents." (Id., p. 6, 9.) The school describes its curriculum as using "God's Word to illumine and bring form to each subject." (Id., p. 11.)

Dayspring also regularly conducts prayer with its students. Monday chapel is embedded in the weekly schedule. (Id., p. 39.) The Handbook states Wednesday homework is intentionally lighter "so that families may take the opportunity to attend mid-week services or Bible studies." (Id., p. 42.) Bible is a required course in every grade from 6th through 12th, with specific courses including Christology (9th grade), Hermeneutics (10th grade), Doctrines (11th grade), Worldviews

(12th grade), and New Testament Greek (12th grade). (Id., pp. 28-29.) Four Bible credits are expressly required for graduation. (Id., p. 31.) The entire curricular framework, the "Principle Approach," is described as "America's historic, Biblical method of education." (Id., p. 36.)

Finally, enrollment at Dayspring requires that at least one parent be "born again (John 3:3)" and attend a "Bible-believing church." (Id., p. 21.) High school students themselves must be "born again." (Id., p. 22.)

Plaintiff attempts to circumvent the religious entity exemption under the ADA by alleging that, "[a]lthough DCA purports to have a Christian-based curriculum, it is not a religious entity, a religious organization, or an entity controlled by a religious organization." (Compl., ¶ 13.) It is not sufficient to simply deny Dayspring is a religious entity and Plaintiff's argument fails as a matter of law. For instance, in Sky R. v. Haddonfield Friends School, the court dismissed a similar attempt by plaintiffs to argue that a religious school had "strayed from its religious foundation" and therefore was not entitled to the ADA exemption, holding that what controls is the totality of the school's religious character as reflected in its governing documents and religious operations, not a plaintiff's conclusory characterization of the school as secular. 2016 U.S. Dist. LEXIS 43002, at **22, 32-33 (D.N.J. Mar. 31, 2016). In fact, Plaintiff does not (and indeed, cannot) allege any facts suggesting Dayspring operates as a secular institution, and he even concedes that Dayspring "purports to have a Christian-based curriculum."[4] Therefore Dayspring is exempt from ADA coverage.

---

[4] The court in Sky allowed for limited discovery to explore whether the religious organization exemption applied. 2016 U.S. Dist. LEXIS 43002, at **18-19. If this Court were to require additional information to ascertain whether Dayspring met the religious exemption under the ADA, before ruling on this Motion, Defendants would respectfully request that this Court grant limited discovery to address this issue.

**ii. Plaintiff Cannot Recover Damages Under Title III of the ADA and Does Not Have Standing to Prosecute His Claim for any Future Injunctive Relief.**

Even if Dayspring were not exempt from the ADA as a religious organization at this stage, Plaintiff's ADA claim must still be dismissed because Plaintiff seeks relief unavailable under the statute. While Title III of the ADA[5] provides a private cause of action to persons subjected to disability discrimination in places of public accommodation, La. Counseling & Family Servs. Inc. v. Mt. Fuji Japanese Rest., No. 08-6143, 2011 U.S. Dist. LEXIS 83442, at *11 n.4 (D.N.J. July 27, 2011) (citing 42 U.S.C. §§ 12182(a), 12188(a)(2)), Title III's enforcement provision authorizes only injunctive relief. Hollinger v. Reading Health Sys., No. 15-5249, 2017 U.S. Dist. LEXIS 12871, at *9 (E.D. Pa. Jan. 30, 2017) (citing 42 U.S.C. § 12188(a)). Therefore, "Title III defendants cannot be liable for money damages." Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 433 (3d Cir. 2003) (citing 42 U.S.C. § 12188(a)).

Here, Plaintiff seeks "compensatory damages," "punitive damages," and other monetary relief under Count I of the Complaint. (Compl., Prayer for Relief ¶¶ b-d.) This request for monetary relief falls outside the bounds of available relief under Title III, and therefore this claim should be dismissed. See 42 U.S.C. § 12188(a); see also Lindstrom v. St. Joseph's Sch. for the Blind, Inc., 2016 U.S. Dist. LEXIS 135551, at **9-10 (D.N.J. Sept. 30, 2016) (dismissing ADA claim where plaintiff sought compensatory damages, attorneys' fees, punitive damages, interest, and costs).

Further, Plaintiff seeks a declaratory judgment that Dayspring's actions, policies, and practices violated Plaintiff's rights under the ADA. (Compl., Prayer for Relief, ¶ a.) But only

---

[5] While Plaintiff does not specify under which ADA provision he brings his claim, Defendants construe Plaintiff's Complaint as asserting a cause of action under Title III of the ADA, based on his allegations that "DCA operates as a place of public accommodation under the ADA… ." (Compl., ¶ 14.)

"prospective injunctive relief" is permitted under the statute. See 42 U.S.C. § 12182; see also Bowers, 246 F.3d at 433; Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013). In fact, a Title III plaintiff lacks standing to seek injunctive relief "unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." Abadi v. Target Corp., No. 23-1050, 2023 U.S. App. LEXIS 15036, at *4 (3d Cir. June 16, 2023) (citing Pryor v. Nat'l Collegiate Athletic Ass'n., 288 F.3d 548, 561 (3d Cir. 2002) (quotation marks omitted)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." Anderson, 943 F. Supp. 2d at 538 (citing O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)).

Here, Plaintiff requests only past relief (*i.e.*, a declaratory judgment that the actions *violated* Plaintiff's rights in the past). Plaintiff only describes past actions that he seeks to declare violations, but there is no "real and immediate threat" of injury that can be prospectively remedied. (Compl., Prayer for Relief, ¶ a.) Indeed, Plaintiff has already graduated from Dayspring, and his relief is limited to remedying past conduct. Therefore, Plaintiff lacks standing to pursue injunctive relief under Title III. See Bowers, 246 F.3d at 433; Anderson, 943 F. Supp. 2d at 538; Abadi, 2023 U.S. App. LEXIS 15036, at *4; Pryor, 288 F.3d at 561.

Without the availability of either monetary damages or injunctive relief, Plaintiff's ADA claim fails as a matter of law and must be dismissed.

   **B.  Plaintiff's Claim Pursuant to the Rehabilitation Act Should be Dismissed Because Dayspring Does Not Receive Federal Financial Assistance.**

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of . . . his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity *receiving Federal financial assistance*." 29 U.S.C. § 794(a) (emphasis added). Receipt of federal financial assistance is therefore a necessary prerequisite to bringing a claim under the Rehabilitation Act. See Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002).

Here, Plaintiff's Complaint fails to allege that Dayspring received federal financial assistance during the relevant time period. Plaintiff makes only two allegations in support of this essential element: first, that Dayspring received PPP loans during 2020-2021 that were "in repayment" during the relevant time period (Compl., ¶¶ 9-11), and second, that Dayspring "participates in Pennsylvania's Educational Improvement Tax Credit ("EITC") and Opportunity Scholarship Tax Credit ("OSTC") programs." (Compl., ¶ 12). Neither allegation is sufficient to establish Plaintiff's receipt of *federal* financial assistance and therefore Plaintiff's claim pursuant to Section 504 should be dismissed.

### i. PPP Loans Do Not Create Continuing Obligations Under the Rehabilitation Act

Courts in the Third Circuit have not determined that receipt of an SBA Paycheck Protection Program ("PPP") loan is sufficient to establish receipt of federal financial assistance for the purpose of surviving a motion to dismiss. See Doe v. Abington Friends Sch., No. 22-0014, 2022 U.S. Dist. LEXIS 201121, at *21 (E.D. Pa. Nov. 4, 2022) (citing cases); Dipietro, 711 F. Supp. 3d at 494. But *even assuming* that PPP loans do constitute "federal financial assistance" for purposes of the Rehabilitation Act, any such assistance ended when the government forgave the loans. Dipietro, 711 F. Supp. 3d at 493. ("[No courts] dispute, however, that even if a PPP loan created obligations under Section 504, those obligations would cease when the government forgives the loan.") Within the Third Circuit, Section 504 "applies only during the periods during which the [federal] funds are accepted." Id. (citing Koslow, 302 F.3d at 166 n.3). In Dipietro, this Court discounted any acts occurring after the time the PPP loan was forgiven. See 711 F. Supp. 3d at

494. If Dayspring's PPP loan even constituted "federal financial assistance," then any acceptance of that assistance ended when the government forgave the loan.

According to publicly available records,[6] Dayspring received a PPP loan in the amount of $449,692, which is listed as being forgiven as of December 30, 2020. The operative incidents in this case occurred during the 2022-2023 school year. (Compl., ¶¶ 43-48.) Even if the PPP loans created obligations under Section 504, those obligations would have ceased upon their forgiveness in December 2020. Accordingly, Dayspring was not receiving federal financial assistance in the form of any PPP loan during the relevant time period. If Plaintiff here were to argue that pre-2022 allegations may have occurred during the term of the PPP loan, those allegations should be discounted because there is no allegation that Plaintiff CM was actually the victim of any discrimination or harassment during that time.  (Compl., ¶¶ 31-39.) Therefore, as in Dipietro, "there is no legal basis on which the school could be liable under the [Rehabilitation Act]." See 711 F. Supp. 3d at 493.

### ii. State Tax Credit Programs Do Not Constitute Federal Financial Assistance

Plaintiff's allegations that Dayspring participates in Pennsylvania's EITC and OSTC programs also do not establish receipt of federal financial assistance. First, Plaintiff alleges only that "[p]articipation in those programs requires it to abide by state and federal anti-discrimination laws." (Compl., ¶ 12.) Whether Dayspring "participated" in those state programs is of no moment, as Plaintiff does not allege that Dayspring actually received any *federal financial assistance* through these programs as required by law.

---

[6] See ProPublica Paycheck Protection Program search page for Dayspring Christian Academy available at
https://projects.propublica.org/coronavirus/bailouts/search?q=dayspring+christian+academy+mountville&v=

And, Plaintiff's potential receipt of state tax credits does not equate to receipt of "federal financial assistance" sufficient to trigger Section 504 coverage. The EITC and OSTC programs are state tax credit programs administered by Pennsylvania, not federal financial assistance programs. Plaintiff has made no allegation that Dayspring actually *received* any federal funds through these state programs. What is more, case law from this Circuit confirms that tax exemptions do not qualify as financial assistance. "Assistance," as used in the Rehabilitation Act "connotes the transfer of government funds by way of subsidy, *not merely exemption from taxation*." Martin v. Del. Law Sch. of Widener Univ., 625 F. Supp. 1288, 1302 (D. Del. 1985) (citing Bachman v. American Society of Clinical Pathologists, 577 F. Supp. 1257 (D.N.J. 1983)) (emphasis added.) Thus, Plaintiff's deficient allegations cannot satisfy the federal financial assistance requirement of the Rehabilitation Act.

Because Plaintiff has failed to adequately allege that Dayspring received federal financial assistance during the relevant time period, Count II must be dismissed for these reasons as well.

### C. Plaintiff Fails to State any Claim for Relief Under the Rehabilitation Act.

Plaintiff's Section 504 claims must separately fail because: (1) he has failed to plead sufficient facts to establish intentional discrimination or deliberate indifference required for compensatory relief, (2) punitive damages are not available under the Rehabilitation Act, and (3) like with his ADA claim, he lacks standing to pursue any claims for prospective relief.

#### i. Plaintiff Fails to Plead Intentional Discrimination or Deliberate Indifference Required for Compensatory Damages

To support a claim for compensatory damages under the Rehabilitation Act, a plaintiff must allege intentional discrimination. S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 261 (3d Cir. 2013). A plaintiff can show intentional discrimination by alleging the defendant acted with deliberate indifference, which requires that the defendant: (1) had knowledge "that a federally

protected right [was] substantially likely to be violated"; and (2) "fail[ed] to act despite that knowledge." <u>D.E. v. Cent. Dauphin Sch. Dist.</u>, 765 F.3d 260, 269 (3d Cir. 2014). To set forth a claim for deliberate indifference, a plaintiff must allege "a deliberate choice, rather than negligence or bureaucratic inaction." <u>Id.</u> Deliberate indifference also requires "actual knowledge;" "allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." <u>K.K. ex rel. L.K. v. Pittsburgh Pub. Sch.</u>, 590 F. App'x 148, 153 (3d Cir. 2014). And, mere conclusory allegations of deliberate indifference are insufficient to sustain a claim for compensatory damages. <u>See</u> <u>A.H. v. Med. Rescue Team S. Auth.</u>, No. 2:23-CV-02176-MJH, 2025 U.S. Dist. LEXIS 191204, at *13-15 (W.D. Pa. Sept. 29, 2025).

Here, Plaintiff's own allegations demonstrate that Dayspring did not *fail* to act, but merely took action that Plaintiff subjectively deems inadequate. First, and importantly, nowhere does CM allege that he actually reported any incidents of bullying prior to the 2023 incidents. Indeed, the Complaint only states that the Headmaster was somehow aware of bullying issues, and then sent multiple emails addressing these concerns in CM's grade class. (Compl., ¶¶ 36-37, 43-44.) On October 18, 2018, then-Principal Stone sent a detailed email to parents of sixth-grade boys describing specific problematic behaviors and outlining planned consequences, including allowing boys to go to the bathroom only one at a time, teachers walking students to their lockers and classes, students eating lunch separately, conducting parent conferences, and issuing detentions and in-school suspensions. (Compl., ¶¶ 37-39.) On January 26, 2022 and January 30, 2022, Headmaster Stone also sent emails to parents in the ninth-grade class addressing additional behavioral issues and calling a prayer meeting. (Compl., ¶¶ 43-44.) These allegations establish that Dayspring *did* respond, even if Plaintiff believes inadequately, to general reports of bullying.

Deliberate indifference is a higher standard. It requires "a deliberate choice, rather than negligence or bureaucratic inaction." See D.E., 765 F.3d at 269. Even if Plaintiff's allegations are true that Headmaster Stone "never made changes to class schedules for lunches, never ordered more hallway supervision, and never implemented policies for the staff to limit students, especially boys, in the school bathroom" (Compl., ¶ 40), or offered "no other solutions" other than a call to the 9th grade parents and a prayer meeting (Compl., ¶¶ 43, 44), this demonstrates at most that Dayspring's responses were insufficient or ineffective. This does not rise to the level of "deliberate indifference." The fact that Dayspring took *some* action precludes a finding that it made a "deliberate choice" not to act.

The recent decision in Fuller, 2025 U.S. Dist. LEXIS 180820, demonstrates the high standard for deliberate indifference. In Fuller, a non-verbal student with Down Syndrome was sexually assaulted by another non-verbal student on a school bus while the driver admitted she was distracted on her cell phone and no attendant was present. Id., at *3. An investigation was initiated by the Title IX coordinator and led by an outside law firm. Id. However, neither child was interviewed by a professional trained in such matters. The School District found that the accused student was not responsible for sexual harassment or battery. Id. The court granted the defendant school district's motion to dismiss the ADA and RA claims, holding that the complaint failed to plead facts showing the School District had *knowledge* that a harm to a federally protected right was substantially likely, or that *it failed to act* on that likelihood. Id., at **5-6. It found that the School District still did something: it had adopted an IEP for the plaintiff, which provided for his safe transport, including the use of a seat belt, but nothing was pleaded that showed that the School District "knew that [plaintiff's] riding a school bus with other students presented a substantial likelihood that he would be sexually assaulted or deprived of any statutory right as a disabled

14

individual," nor that the District failed to act on that likelihood. Id., at *6. The court emphasized the standard under the ADA and Rehabilitation Act is a "stringent standard of deliberate indifference." Id., at *6.

Nowhere does CM allege that Dayspring should have been on notice of potential bullying against him, as he does not allege that he ever reported any bullying against him prior to 2022-2023; only that "DCA administrators and board members were aware" that LS's bullying was directed at others in the P139 class. (Compl., at ¶ 34.) And when it did find out about potential bullying, it did not stand idle: it sent communications to parents addressing bullying, outlined specific disciplinary consequences, and called meetings to address parents' concerns. (Compl., at ¶¶ 37, 39, 43-44.) This is not deliberate indifference.

Moreover, the Complaint contains no factual allegations that Dayspring had actual knowledge that CM's specific disability-related rights under the *Rehabilitation Act* were involved. Plaintiff did not plead facts to show that Dayspring understood its responses to general bullying complaints implicated *federal disability rights*, as opposed to ordinary school disciplinary matters. Plaintiff's claim for compensatory damages under the Section 504 of the Rehabilitation Act therefore must be dismissed.

### ii. Punitive Damages Are Not Available Under the Rehabilitation Act

Punitive damages are also not available for Plaintiff's Section 504 claim. Barnes v. Gorman, 536 U.S. 181, 187-88 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under… § 504 of the Rehabilitation Act."); Kowalski v. Postmaster Gen. of the United States, 811 Fed. App'x 733, 737 (3d Cir. 2020) (citing Barnes). Thus, Plaintiff's requests for punitive damages pursuant to Section 504 of the Rehabilitation Act fail.

### iii.  Plaintiff Lacks Standing to Pursue Prospective Injunctive Relief Under the Rehabilitation Act

Plaintiff also lacks standing to pursue injunctive or declaratory relief under the Rehabilitation Act. "A plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

For the same reasons set forth in Section A.ii., *supra*, Plaintiff cannot demonstrate a "real and immediate threat" of future injury necessary to pursue prospective relief under the Rehabilitation Act. See Shaika v. Gnaden Huetten Mem'l Hosp., No. 3:15-0294, 2015 U.S. Dist. LEXIS 87478, at **19-20 (M.D. Pa. July 7, 2015) (dismissing Rehabilitation Act claim for injunctive and declaratory relief for lack of standing where plaintiff sought relief regarding past conduct.) Plaintiff graduated from Dayspring in spring 2025 and seeks a declaratory judgment regarding past actions, and for Dayspring to implement policies to prevent future RA violations going forward. (Compl., ¶ 21; Prayer for Relief, ¶¶ i, m.) Without a continuing relationship with Dayspring or any real and immediate threat of future injury, Plaintiff lacks standing to pursue declaratory or injunctive relief under the Rehabilitation Act.

Because Plaintiff cannot recover compensatory damages, punitive damages, or prospective relief, Plaintiff has failed to state any viable claim for relief under the Rehabilitation Act. Count II must therefore be dismissed in its entirety.

### D.  Plaintiff's Federal Claims Also Fail Because He has not Alleged Discrimination by Dayspring Because of his Disability.

Even if Plaintiff's federal claims survived the foregoing, they still fail because he has not alleged that he was denied benefits or subjected to discrimination "because of" his disability. The Rehabilitation Act requires that a plaintiff prove he was "excluded from the participation in, be *denied the benefits of*, or be subjected to discrimination under any program or activity . . . *solely*

*by reason of* . . . his disability." 29 U.S.C. § 794(a) (emphasis added). The ADA also requires that a plaintiff show that the discrimination be "by reason of such disability." 42 U.S.C. § 12132.

Plaintiff does not allege that he was denied any benefits at all or that his education suffered. He also does not allege that he was discriminated against or denied benefits "solely by reason of" or even "by reason of" his alleged disability. The Complaint makes clear the harm resulted from bullying by other students, and that Dayspring's response was directed equally to all affected students regardless of disability status. This reflects a general response to bullying, *not discrimination by Dayspring motivated by CM's disability*. Because Plaintiff has alleged no causal connection between his disability and Dayspring's conduct, his ADA and Section 504 claims must be dismissed. See C.M. v. Pemberton Twp. High Sch., No. 16-9456, 2017 U.S. Dist. LEXIS 11434, at *17-18 (D.N.J. Jan. 27, 2017) (dismissing Rehabilitation Act claim as "no facts put forth in the complaint suggest that even if the school did fail to protect the decedent from bullying, their failure was predicated upon an intent to single out one particular disabled student.")).

Plaintiff must allege a causal connection between his disability and the alleged discrimination. He has not done so. Therefore, Plaintiff's ADA and Section 504 claims are deficient and must be dismissed.

### E. **Plaintiff's Duplicative State Law Claims are Preempted by Federal Discrimination Claims, or in the alternative, the Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims.**

Plaintiff's state law claims for negligence and breach of contract also fail as a matter of law, and must be dismissed with prejudice. Plaintiff bases his state contract and tort claims solely on the alleged discriminatory conduct by Dayspring. Plaintiff attempts to bring state claims based on the same alleged Dayspring "policies of inaction" towards bullying of students with disabilities. (Compl., ¶¶ 34, 46-47.) He alleges the same injuries, *i.e.*, "enduring humiliating bullying,

harassment, and sexual harassment due to his disability." (Id. at ¶¶ 26, 46-47.) CM's theory for his breach of contract and negligence claims is that Dayspring failed to "remedy known bullying and harassment" and adhere to its policies aimed to curb such student behavior.[7] (Id. at ¶¶ 79-85, 93-97, 100.) Because Plaintiff's state law claims arise from the same alleged discriminatory conduct, the Court should hold that they are preempted by applicable federal discrimination law. See Auteri v. VIA Affiliates, No. 22-3384, 2023 U.S. Dist. LEXIS 193831, **16-17 (E.D. Pa. October 30, 2023) ("State and federal discrimination laws preempt breach of contract claims 'that arise solely from alleged discriminatory conduct.'") (citations omitted); Weirich v. Horst Realty Corp., LLC, No. 07-CV-871, 2007 U.S. Dist. LEXIS 50923, *4 (E.D. Pa. July 11, 2007) ("The ADA and PHRA preempt state law claims that arise solely from alleged discriminatory conduct.") (citing, e.g., Bruffett v. Warner Communications, Inc., 692 F.2d 910, 918 (3d Cir. 1982)).

        In the alternative, because Plaintiff's ADA and Section 504 claims must be dismissed, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims for negligence and breach of contract. This Court's supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which provides that a district court "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Put another way, because the District Court dismissed all

---

[7] Plaintiff bases his negligence claim on the alleged contract formed by the Code of Conduct within the Dayspring Student Handbook, *i.e.*, the policies Dayspring failed to adhere to that were aimed at curbing bullying and harassment between students. (Compare Compl. at ¶¶ 79-80 and at ¶¶90-97.) Consequently, his negligence claims are also barred under the gist of the action doctrine. Simonetta v. Allegheny Coll., No. 20-32 ERIE, 2021 U.S. Dist. LEXIS 45639, *19 (W.D. Pa. Mar. 11, 2021) (holding the plaintiff's negligence claims were barred by "the gist of the action doctrine" when gravamen of complaint was a breach of contract action) (citing Reardon v. Allegheny College, 926 A.2d 477 (Pa. Super. 2007) (ruling negligence claims were barred by the gist of the action doctrine where the university policies "represent[ed] the sole basis for the relationship between the parties")).

claims over which it had original jurisdiction, it had the authority to decline to exercise supplemental jurisdiction." Greco v. Senchak, 627 F. App'x 146, 150-51 (3d Cir. 2015). Indeed, the Third Circuit has held that, "absent extraordinary circumstances," "jurisdiction [over claims based on state law] should be declined where the federal claims are no longer viable." Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984).

Here, as this Court should dismiss Plaintiff's federal claims under the ADA (Count I) and the Rehabilitation Act (Count II), the prerequisites for declining supplemental jurisdiction under § 1367(c)(3) are met. Neither Plaintiff nor the facts of this case present any exceptional circumstances favoring the exercise of supplemental jurisdiction. Plaintiff cannot identify any reason why this federal court should retain jurisdiction over what are purely state law claims of negligence and breach of contract.

### F.  Plaintiff's Complaint Violates Rule 8(a) Due to Failure to Plead in a Clear and Concise Manner

Federal Civil Rule of Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Shotgun pleading occurs where there is "a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.'" Bartol v. Barrowclough, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting Weiland v. Palm Beach Cnty. Sherriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015).)

Plaintiff pleads conclusory, vague, and immaterial facts to bolster his claims and smear the Headmaster's and his son's reputations. Defendants therefore move to dismiss the Complaint under Fed. R. Civ. P. 8(a). Alternatively, Defendants move to strike the Paragraphs related specifically to LS such as ¶¶ 27-29.c., 31-33, 48, 49, 51, and 52 as immaterial, impertinent, and scandalous pursuant to Fed. R. Civ. P. 12(f).

Respectfully submitted,

**O'HAGAN MEYER, PLLC**

Dated: March 9, 2026

BY:    /s/ *Hillary B. Weinstein*
John P. Morgenstern, Esquire
Hillary B. Weinstein, Esquire
Elizabeth A. Castillo, Esquire
PA ID Nos: 80014/209533/332138
Three Logan Square
1717 Arch Street, Suite 3910
T: 215-461-3300
F: 215-461-3311
JMorgenstern@ohaganmeyer.com
HWeinstein@ohaganmeyer.com
ECastillo@ohaganmeyer.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **C.M., individually and through his Parents, CM SENIOR and JM,** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 5:26-CV-00007-JMG |
| | : | |
| v. | : | |
| | : | |
| **DAYSPRING CHRISTIAN ACADEMY, et al.,** | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATION OF PRE-MOTION MEET AND CONFER</u>

The undersigned counsel certifies that on February 26, 2026, Counsel for Defendants Dayspring Christian Academy, Daniel Stone, Sandy Abel, Jeff Funk, Janice Martino-Gotshall, Matt Lapp, Dr. Michael R. Myers, Art Remington, Jeff Smoker, and Kevin Zimmerman (hereinafter the "Moving Parties") sent Counsel for Plaintiff a copy of their intended Motion to Dismiss. Counsel for Defendants further certifies that on March 2, 2026, the parties met and conferred by video call with Counsel for Plaintiff to provide Plaintiff an opportunity to cure the several pleading deficiencies alleged by the Moving Parties. During the meet and confer, Counsel for the Moving Parties discussed the substance of the contemplated Motion to Dismiss Plaintiff's Complaint. The parties were unable to reach a resolution on the Moving Parties' alleged pleading deficiencies. As this matter was unable to be resolved through substantive verbal and written communications, the attached Motion to Dismiss is being filed.

Respectfully submitted,

**O'HAGAN MEYER, PLLC**

BY: _Hillary B. Weinstein_
John P. Morgenstern, Esquire
Hillary B. Weinstein, Esquire
Elizabeth A. Castillo, Esquire
PA ID Nos: 80014/209533/332138
Three Logan Square
1717 Arch Street, Suite 3910
T: 215-461-3300
F: 215-461-3311
JMorgenstern@ohaganmeyer.com
HWeinstein@ohaganmeyer.com

Date:    March 9, 2026

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **C.M., individually and through his Parents, CM SENIOR and JM,** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 5:26-CV-00007-JMG |
| | : | |
| v. | : | |
| | : | |
| **DAYSPRING CHRISTIAN ACADEMY, et al.,** | : | |
| | : | |
| Defendants. | : | |

**<u>CERTIFICATE OF SERVICE</u>**

I, Hillary B. Weinstein, Esquire, hereby certify that on this date, a true and correct copy of the foregoing Motion to Dismiss Plaintiff's Complaint was sent to all counsel of record via the ECF system.

Respectfully submitted,

**O'HAGAN MEYER, PLLC**

BY: <u>*Hillary B. Weinstein*</u>
John P. Morgenstern, Esquire
Hillary B. Weinstein, Esquire
Elizabeth A. Castillo, Esquire
PA ID Nos: 80014/209533/332138
Three Logan Square
1717 Arch Street, Suite 3910
T: 215-461-3300
F: 215-461-3311
JMorgenstern@ohaganmeyer.com
HWeinstein@ohaganmeyer.com
ECastillo@ohaganmeyer.com

Date:   March 9, 2026