**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  | : |  |
|---|---|---|
| **C.M., individually and through his Parents, CM SENIOR and JM,** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 5:26-CV-00007-JMG |
| | : | |
| v. | : | |
| | : | |
| **DAYSPRING CHRISTIAN ACADEMY, et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____ 2026, upon consideration of the Motion for Leave to Submit a Reply Memorandum of Law in Support of the Motion to Dismiss by Dayspring Christian Academy, Daniel Stone, Sandy Abel, Jeff Funk, Janice Martino-Gotshall, Matt Lapp, Dr. Michael R. Myers, Art Remington, Jeff Smoker, and Kevin Zimmerman ("Defendants"), it is hereby **ORDERED** that the Motion is **GRANTED**, and Defendants may file their Reply Memorandum of Law.

**BY THE COURT:**

_____
J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **C.M., individually and through his Parents, CM SENIOR and JM,** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 5:26-CV-00007-JMG |
| | : | |
| v. | : | |
| | : | |
| **DAYSPRING CHRISTIAN ACADEMY, et al.,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MOTION FOR LEAVE TO SUBMIT A REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Dayspring Christian Academy, Daniel Stone, Sandy Abel, Jeff Funk, Janice Martino-Gotshall, Matt Lapp, Dr. Michael R. Myers, Art Remington, Jeff Smoker, and Kevin Zimmerman (hereinafter "Defendants"), by and through their attorneys, O'Hagan Meyer, PLLC, pursuant to Rules 7 and 83 of the Federal Rules of Civil Procedure and this Court's Policies and Procedure No. II.B(3), hereby move this Court for leave to submit this Reply Memorandum of Law in Support of their Motion to Dismiss the Complaint, attached as Exhibit "A." Plaintiff filed a Response to the Defendants' Motion to Dismiss on March 23, 2026, and Defendants hereby seek limited additional briefing to reply on the new issues raised therein.

Respectfully submitted,

**O'HAGAN MEYER, PLLC**

Dated: March 30, 2026

BY:    /s/ *Hillary B. Weinstein*
John P. Morgenstern, Esquire
Hillary B. Weinstein, Esquire
Elizabeth A. Castillo, Esquire
PA ID Nos: 80014/209533/332138
Three Logan Square
1717 Arch Street, Suite 3910
T: 215-461-3300
F: 215-461-3311
JMorgenstern@ohaganmeyer.com
HWeinstein@ohaganmeyer.com
ECastillo@ohaganmeyer.com

# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **C.M., individually and through his Parents, CM SENIOR and JM,** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 5:26-CV-00007-JMG |
| | : | |
| v. | : | |
| | : | |
| **DAYSPRING CHRISTIAN ACADEMY, et al.,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Dayspring Christian Academy, Daniel Stone, Sandy Abel, Jeff Funk, Janice Martino-Gotshall, Matt Lapp, Dr. Michael R. Myers, Art Remington, Jeff Smoker, and Kevin Zimmerman (hereinafter "Defendants"), by and through their attorneys, O'Hagan Meyer, PLLC, respectfully submit this Reply Memorandum of Law in Support of their Motion to Dismiss. Plaintiff does not salvage his deficient Complaint. He seeks money damages that Title III does not permit, and what is more, Dayspring meets the ADA religious exemption according to publicly available materials that go to eight of the nine LeBoon factors. He seeks injunctive relief that he lacks standing to pursue under either the ADA or Section 504, and he seeks Section 504 liability untethered to any period of actual federal funding. His causation theory is conclusory. Finally, he concedes punitive damages are unavailable under Section 504 by failing to respond at all. No amount of discovery will change these legal deficiencies. The Complaint should be dismissed.

### A. Plaintiff Cannot Overcome Dismissal of His ADA Claim for Compensatory Damages By Ignoring Black Letter Law and Failing to Specify an ADA Title

Plaintiff's ADA claim fails at the outset because he cannot recover any money damages under Title III of the ADA (and he does not have a claim for injunctive relief, see Section III.A.ii.

1

of Defendants' Motion to Dismiss, Doc. 19 at 8, and Section B herein). This Circuit has held, relying on the ADA's clear and unambiguous language, that Title III provides for injunctive relief alone. See Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 433 (3d Cir. 2003) ("Title III defendants cannot be liable for money damages.") (citing 42 U.S.C. § 12188(a) (providing that the remedy available is injunctive relief under 42 U.S.C. § 2000a-3(a)); De Camara v. Bryn Mawr Coll., 2025 U.S. Dist. LEXIS 190436, *23 (E.D. Pa. 2025) ("Congress intended Title III apply to private universities and Congress does not allow the Students to recover money damages") (citations omitted). To counter this, Plaintiff argues he can sidestep the Title III preclusion (1) by seeking compensatory damages through a finding of deliberate indifference; and (2) not specifying under which Title of the ADA he pleads. Both of these propositions fail.

First, Plaintiff argues for a "deliberate indifference exception" to the money damages preclusion. (Doc. 20 ("Response") at 6-7.)[1] Defendants are unaware of any binding law to support Plaintiff's argument, and if any exists, such law is contrary to the ADA's plain language. See 42 U.S.C. § 12188(a); 42 U.S.C. § 2000a-3(a). Instead, Plaintiff relies on the Eleventh Circuit case of Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824 (11th Cir. 2017). (Response at 6-7.) But Silva did not hold that a finding of deliberate indifference allows for money damages under Title III. 856 F.3d at 841. The issue of available damages was not before the court. Id.; see also Silva v. Baptist Health S. Fla., Inc., 303 F. Supp. 3d 1334, 1335-36, 1342-43 (S.D. Fla. 2018) (evaluating only Plaintiff's Section 504 claims for money damages on remand from the Eleventh Circuit). What is more, the Eleventh Circuit, the same circuit Plaintiff turns to for support, has also held Title III provides for only injunctive relief. See, e.g., A.L v. Walt Disney Parks and Resorts US,

[1] Plaintiff's pagination of the Response differs from the ECF-stamped pagination. This Reply uses Plaintiff's pagination.

Inc., 900 F.3d 1270, 1290 (11th Cir. 2018) ("Because only injunctive relief is available, a plaintiff is not entitled to a jury trial on Title III claims.").

Plaintiff next attempts to circumvent the money damages preclusion "by not specify[ing] Title III" in his Complaint and stating that "it is too early to determine what damages C.M. has available to him under [the] ADA." (Response at 6-7.) The law does not support his position. When a plaintiff fails to specify the Title of the ADA, the court looks to the complaint to find the indicia under which Title plaintiff brings his claims. See, e.g., Contee v. Univ. of Pa., 2021 U.S. Dist. LEXIS 120662, *6 (E.D. Pa. 2021) (construing Plaintiff's allegations as an ADA Title I claim because "[a]lthough the [c]omplaint d[id] not specify whether it seeks relief for discrimination under Title I or Title III of the ADA, it contain[ed] indicia of a Title I claim"); Magagna v. Salisbury Twp. Sch. Dist., 1998 U.S. Dist. LEXIS 20625, *9 (E.D. Pa. 1998) (construing Plaintiffs' Complaint as raising Title II claims, although Plaintiffs did not "specify under which title of the ADA they assert liability"). Omitting the Title is not a loophole for an ADA claim to survive a 12(b)(6) motion.

Plaintiff's Complaint contains "indicia" of a Title III claim. (See Doc. 1 ("Compl."), generally; see also Compl., ¶14 (Dayspring "operates as a place of public accommodation under the ADA")). "The ADA is divided into three titles of regulation—Title I (employers), Title II (governments), and Title III (public accommodations)." Matheis v. CSL Plasma, Inc., 936 F.3d 171, 176 (3d Cir. 2019). Plaintiff does not plead any employment-related allegations to indicate a Title I claim, or that Dayspring is "a public entity," "government unit" or "instrumentality of a

3

State" to indicate a Title II claim.[2] Plaintiff alleges only a Title III claim, and therefore, cannot plead an ADA claim for money damages.

### B. Plaintiff Has No Standing to Bring an ADA or Section 504 Claim For Injunctive Relief So He Can Attend "Extracurricular Events"

Plaintiff argues his ADA and Section 504 claims should survive because he is entitled to injunctive relief, contending that his potential and voluntary attendance at extracurricular events would qualify him. (See Response at 7-9, 13.) Plaintiff relies on a four-factor test used to determine whether a plaintiff will return to the place of the alleged ADA violation, from Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 534 (W.D. Pa. 2013).[3] (See Response at 7.) The shortcomings of Plaintiff's position are two-fold.

First, Plaintiff ignores binding precedent that a student's claims for declaratory or injunctive relief under the ADA, Section 504, and other federal laws are generally mooted by graduation. See Mirabella v. William Penn Charter Sch., 752 Fed. Appx. 131, 133 (3d Cir. 2018) ("When a student challenges the legality of a school's conduct, the student's 'graduation typically moots her claim for injunctive or declaratory relief.'") (citing and quoting Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 216 (3d Cir. 2003) (collecting cases on mootness by student-plaintiff's graduation)); see also K. K. v. Pittsburgh Pub. Sch., 590 Fed.

---

[2] If Plaintiff argues that Dayspring's alleged receipt of federal funds or participation in a state tax credit program brings his claim under Title II, the law is clear that this is insufficient to plead an entity is subject to Title II. See, e.g., Langston v. Milton S. Hershey Med. Ctr., 2016 U.S. Dist. LEXIS 48332, *31 (M.D.P.A. 2016).

[3] "[C]ourts generally look to four factors to determine the likelihood of the plaintiff returning to the place of the alleged ADA violation, and therefore **whether the threat of injury is concrete and particularized**: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) **the definitiveness of the plaintiff's plan to return**; and (4) the plaintiff's frequency of nearby travel." Anderson, 943 F. Supp. 2d at 539 (internal quotation marks and citation omitted) (emphasis added).

4

Appx. 148, 154 n.4 (3d Cir. September 22, 2014) ("Claims for declaratory and injunctive relief under [Section 504] are mooted in most instances by the plaintiff-student's graduation. . . .")

There is an "extremely narrow" exception to the rule of mootness by graduation, when (1) the challenged action of the school is too short in duration to be fully litigated before the case becomes moot, and (2) there is a reasonable expectation that the complaining party will be subjected to the same action again. See Mirabella, 752 Fed. Appx. at 133-34 (citing, *inter alia*, Donovan, 336 F.3d at 216-17). Plaintiff never argues the exception applies, which obviates its application to this case. See K. K., 590 Fed. Appx. at 154 n.4 (finding that plaintiff student was not entitled to injunctive relief under Section 504 because plaintiff did not dispute her graduation or argue the exception to mootness applied). Nor can Plaintiff establish the exception applies: his allegations fail at the first prong since he brought this claim well after he graduated and could have brought it years prior while still enrolled at Dayspring.

Second, even if Plaintiff could meet the mootness exception, his allegations do not satisfy the four-factor standing test from Anderson. Plaintiff's Complaint does not specify the particular events he seeks to attend, the concreteness of those plans, the injunctive relief sought so he can attend the events, and makes no related allegations in his Complaint.

### C. Plaintiff Points to No Allegations to Overcome Publicly Available Evidence that Dayspring is a Religious Entity Exempt From the ADA.

Plaintiff's principal argument that Dayspring does not qualify as a religious organization (and thus is subject to the ADA) is that the exemption "*potentially* runs contrary" to participation in Pennsylvania's EITC/OSTC programs, which requires adherence to "federal anti-discrimination law." (See Response at 3-4, emphasis added (citing 24 P.S. § 20-2011-B(1) ("The participating nonpublic school may not discriminate on a basis which is illegal under Federal or State laws applicable to nonpublic schools."))).) Plaintiff cites Section 20-2011-B(1) but nowhere explains

how claiming a religious exemption would put Dayspring's participation in the state EITC/OSTC programs in jeopardy. Indeed, Plaintiff's own qualified language ("*potentially* runs contrary") confirms he cannot establish a conflict. A speculative concern about future consequences to participation in a state tax program is not a legal basis for defeating a motion to dismiss. Plaintiff cites no case law, or other authority, holding that participation in the EITC or OSTC programs waives or is inconsistent with the ADA's religious exemption. Plaintiff's argument amounts to a threat of future discovery dressed as legal argument, and most importantly, does not show Dayspring is ineligible for the exemption.

Plaintiff also responds by arguing Dayspring "only really addresses five" of the nine LeBoon factors. (See Response at 4-6.) Plaintiff splits hairs over allegations, such as the difference between weekly and daily prayer, and Dayspring not requiring its adolescent students to identify as "born again Christians," although it requires as much of their parents. (See id.) Indeed, Dayspring detailed publicly available evidence that goes to eight of the nine LeBoon factors, *e.g.*, its non-profit status, religious product of a Christian education, religious mission or purpose, affiliation with Christian churches, public message of its Christian education, religious curriculum, and religious requirement for all staff, all management, all parents, and all high school students. (Doc. 19 ("Motion to Dismiss") at 4-7.) Moreover, an entity need not meet all LeBoon factors to qualify as a religious entity under the ADA. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 227 (3d Cir. 2007) ("not all factors will be relevant in all cases, and the weight given each factor may vary from case to case.") The weight of publicly-available evidence satisfies the LeBoon test, and at bottom warrants limited discovery (which Plaintiff does not oppose) to decide this issue, should the Court deem this necessary. See Sky R. v. Haddonfield Friends School 2016 U.S. Dist. LEXIS 43002, at 18-19 (D.N.J. Mar. 31, 2016).

6

Plaintiff further argues against religious exemption because Dayspring provides a high school diploma recognized by the state, sufficient for admission to a secular university. (See Response at 5-6.) By Plaintiff's logic, no school could qualify for the exemption. Such a blanket exclusion is contrary to previous holdings by this Court. See, e.g., Dipietro v. Archbishop Wood High Sch., 711 F. Supp. 3d 488, 495 (E.D. Pa. 2024) (holding that a high school met the ADA religious exemption due to its non-profit status, express religious mission and curriculum, students' participation in religious instruction and prayer, and support and supervision by the Roman Catholic Archdiocese of Philadelphia); see also Marshall v. Sisters of the Holy Family of Nazareth, 399 F. Supp. 2d 597, 605-606 (E.D. Pa. 2005) (The ADA religious exemption "is very broad…even when a religious organization carries out activities that would otherwise make it a public accommodation, the religious organization is exempt from ADA coverage.") (quoting 28 C.F.R. Part 36, Appendix B)).

**D. Fact Discovery Will Not Resolve Plaintiff's "State Tax Credit Issue": a State Tax Credit is Not Federal Financial Assistance Under Section 504.**

Plaintiff contends that he "is entitled to discovery on whether the EITC and OSTC programs would meet 'federal financial assistance.'" (Response at 13.) This is a legal issue, not a factual one, and does not necessitate discovery to be decided at the 12(b)(6) stage. Plaintiff has made no allegation that Dayspring actually *received* any federal funds through these state programs.[4] Moreover, "assistance," as used in the Rehabilitation Act "connotes the transfer of government funds by way of subsidy, *not merely exemption from taxation*." Martin v. Del. Law Sch. of Widener Univ., 625 F. Supp. 1288, 1302 (D. Del. 1985) (citing Bachman v. American Society of Clinical Pathologists, 577 F. Supp. 1257 (D.N.J. 1983)) (emphasis added.) The

---

[4] Besides, student scholarships through the EITC program do "not constitute an appropriation or financial assistance to the school." 24 P.S. § 20-2006-B(f).

EITC/OSTC program provides for a Pennsylvania tax credit for Pennsylvania businesses that redirect Pennsylvania tax dollars to an approved organization.

### E. Plaintiff Can Only Base a Section 504 Claim on Alleged Discriminatory Conduct that Occurred When Dayspring Received Federal Funding, Not Years' Later Alleged Conduct of 2023.

Plaintiff's attempt to overcome the federal funding requirement for Section 504 liability by relying on his allegation that Dayspring received a Paycheck Protection Program (PPP) loan during 2020 to 2021, fails for a straightforward reason: publicly available government data establishes that Dayspring's PPP loan was approved on April 14, 2020 and forgiven on December 30, 2020. See PANDEMIC OVERSIGHT, PPP DASHBOARD (December 2025), available at https://www.pandemicoversight.gov/data-interactive-tools/dashboards-datasets/ppp-dashboard. PPP loan forgiveness is contingent on the borrower using the funds. See 15 U.S.C. § 636m(b); U.S. SMALL BUSINESS ADMINISTRATION, (last updated October 3, 2024), https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-loan-forgiveness ("Borrowers can apply [for PPP loan forgiveness] once they've used all the loan proceeds they're requesting forgiveness for.") To receive loan forgiveness in 2020, Dayspring had to use all funds in 2020. This matters because the Third Circuit has held that Section 504 "applies only during the periods during which the [federal] funds are accepted." Dipietro, 711 F. Supp. 3d at 493 (quoting Koslow v. Pennsylvania, 302 F.3d 161, 166 n.3 (3d Cir. 2002)). This holding aligns with Section 504's unambiguous language that links actionable conduct to when the program *receives* federal funding. See 29 U.S.C. § 794(a).

Plaintiff's Complaint, however, does not plead what specific bullying or harassment occurred in 2020, or how Dayspring was deliberately indifferent during that time. (See Response at 9-10; Complaint, at ¶¶32-53.) This is unlike the plaintiff in Doe v. Abington Friends Sch., 2022

8

U.S. Dist. LEXIS 201121, **3-7, *19-21 (E.D. Pa. 2022), who specifically alleged discriminatory conduct within the period of federal funding. Instead, Plaintiff relies on a generalized "pattern or practice" spanning six years to bootstrap his 2020 PPP allegation into coverage of the operative 2023 conduct. He cites no authority supporting that theory, and the theory is inconsistent with the Third Circuit's clear rule tying Section 504 liability to the specific period of federal funding. The operative events in Plaintiff's Complaint are alleged to have occurred years later in 2023.

Plaintiff also contends discovery is needed to "establish the exact date of forgiveness/repayment." (Response at 9.) Discovery is unnecessary. The government's own publicly available dashboard resolves this question and the court may appropriately limit discovery if it determines the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

### F. Plaintiff Fails to Plead any Causal Connection to Demonstrate a Disability Discrimination Claim under Title III or Section 504.

Plaintiff's Response echoes the same conclusory and insufficient allegations of his Complaint to argue causation, *i.e.*, that he was denied benefits or subject to discrimination *by reason of his disability*, as required for a Section 504 or ADA claim. (See Response at 14-15.) In particular, he parrots the language of Section 504, and baldly states he "did not obtain the full benefits" of the P139 program. However, he still does not allege *how* his education was impacted or *how* he was denied the benefits of the P139 program, his modified curriculum, by Dayspring's actions or inactions. Indeed, Plaintiff alleges he remained at Dayspring for sixth through twelfth grades, "was provided services for his disabilities," and earned his diploma in 2025. (Compl., at ¶¶21-25) Plaintiff also attempts to sidestep Defendants' cited case of C.M. v. Pemberton Twp. High Sch., 2017 U.S. Dist. LEXIS 11434 (D.N.J. 2017), in which that court dismissed the plaintiff's ADA and Section 504 claims with prejudice, by claiming that plaintiff's incidents of

being tripped, bitten, and bruised are not "the same level" of his allegations. (<u>See</u> Response at 14.) But, Plaintiff declines to address the causation issue from that case that is analogous to the one here. Like the plaintiff in <u>C.M.</u>, Plaintiff points to no allegations that show Dayspring allegedly failed to respond *because of* his disability, *i.e.*, "predicated upon an intent to single out one particular disabled student." <u>C.M.</u>, 2017 U.S. Dist. LEXIS 11434, \*18 (quoting Butler v. Mountain View Sch. Dist., 2013 U.S. Dist. LEXIS 120867, at \*8 (M.D. Pa. 2013)).[5]

### G. **Plaintiff Concedes Punitive Damages are Not Available under Section 504.**

Plaintiff failed to respond to Defendants' argument that punitive damages are not available under Section 504. (<u>See generally</u> Response.) The Court can find his lack of response supports dismissal. <u>See</u> <u>Fiedler v. Stroudsburg Area Sch. Dist.</u>, 427 F. Supp. 3d 539, 556 (M.D. Pa. 2019) ("[P]laintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."). For these reasons, Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

**O'HAGAN MEYER, PLLC**

Dated: March 30, 2026

BY: /s/ *Hillary B. Weinstein*
John P. Morgenstern, Esquire
Hillary B. Weinstein, Esquire
Elizabeth A. Castillo, Esquire
PA ID Nos: 80014/209533/332138

---

[5] Moreover, Plaintiff's own allegations reflect that Dayspring responded to inappropriate behavior, including notifying parents and staff, outlining actions to take, arranging meetings, and in 2023, conducting a prompt investigation and "interview[]" with CM, resulting in the removal of alleged "offenders." (<u>See</u> Compl., at ¶¶ 37, 39, 43-45, 50-53.) Plaintiff attempts to disguise his knowledge of Dayspring's actions by pleading in the passive voice. (<u>See</u> ¶ 50, "CM was interviewed by the DCA administration…") However artful his technique, Plaintiff still fails to plausibly show Dayspring had knowledge "that a federally protected right [was] **substantially likely** to be violated" and made "a deliberate choice" to not act. <u>See</u> <u>D.E. v. Cent. Dauphin Sch. Dist.</u>, 765 F.3d 260, 269 (3d Cir. 2014) (emphasis added) (stating standard for a deliberate indifference theory of disability discrimination).

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **C.M., individually and through his Parents, CM SENIOR and JM,** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 5:26-CV-00007-JMG |
| | : | |
| v. | : | |
| | : | |
| **DAYSPRING CHRISTIAN ACADEMY, et al.,** | : | |
| | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I, Hillary B. Weinstein, Esquire, hereby certify that on this date, a true and correct copy of the foregoing Reply in Support of Dayspring Defendants' Motion to Dismiss Plaintiff's Complaint was sent to all counsel of record via the ECF system.

Respectfully submitted,

**O'HAGAN MEYER, PLLC**

BY: *Hillary B. Weinstein*
John P. Morgenstern, Esquire
Hillary B. Weinstein, Esquire
Elizabeth A. Castillo, Esquire
PA ID Nos: 80014/209533/332138
Three Logan Square
1717 Arch Street, Suite 3910
T: 215-461-3300
F: 215-461-3311
JMorgenstern@ohaganmeyer.com
HWeinstein@ohaganmeyer.com
ECastillo@ohaganmeyer.com

Date:  March 30, 2026