**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CM, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.: 5:26-cv-00007 |
| | : | |
| Dayspring Christian Academy, et al., | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                              **June 12, 2026**

## I.   OVERVIEW

Plaintiff C.M. ("Plaintiff"), individually and through his parents, alleges that Dayspring Christian Academy ("Dayspring"), Daniel Stone, Sandy Abel, Jeff Funk, Janice Martino-Gotshall, Matt Lapp, Dr. Michael R. Myers, Art Remington, Jeff Smoker, and Kevin Zimmerman (collectively, the "Individual Defendants") violated his rights pursuant to Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and applicable Pennsylvania law. Plaintiff's claims arise from alleged bullying, harassment, and abuse occurring during his enrollment at Dayspring, as well as Dayspring and the Individual Defendants (collectively, the "Defendants") alleged failure to adequately respond to such conduct. Defendants' move to dismiss the Complaint. For the reasons set forth below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## II.     BACKGROUND[1]

This action arises from allegations of disability-based bullying, harassment, and abuse occurring during Plaintiff's enrollment at Dayspring. Plaintiff attended Dayspring from approximately 2018 through 2025. ECF No. 1 ¶¶ 21, 29–30, 37, 43. Plaintiff states that he was born with hydrocephalus and has diagnoses of autism and Attention deficit hyperactivity disorder ("ADHD"), and that he was placed in a classroom designated for students with disabilities during his enrollment. *Id.* ¶¶ 2, 22.

Plaintiff alleges that throughout his enrollment at Dayspring, he was subjected to repeated bullying, harassment, and physical abuse by fellow students, primarily former student LS. *Id.* ¶¶ 26–29. According to the Complaint, the alleged misconduct included verbal harassment, physical assaults, being struck with objects, and inappropriate touching. *Id.* ¶ 29. Plaintiff further asserts that Dayspring administrators and staff were aware of ongoing bullying and harassment directed toward students in the disability classroom, yet failed to take adequate steps to intervene or remedy the conduct. *Id.* ¶¶ 32–47.

Dayspring is a private Christian school operating in Pennsylvania. *Id.* ¶ 5. According to Plaintiff, Dayspring participated in Pennsylvania's Educational Improvement Tax Credit ("EITC") and Opportunity Scholarship Tax Credit ("OSTC") programs, and that it received Paycheck Protection Program ("PPP") funds during portions of the relevant time period. *Id.* ¶¶ 10–12.

On January 2, 2026, Plaintiff commenced this action by filing a Complaint in this Court asserting claims for: (1) violations of Title III of the ADA; (2) violations of Section 504 of the RA; (3) negligence; (4) breach of contract; and (5) assault and battery claims against former student LS. *See generally* ECF No. 1.

---

[1] The Court accepts Plaintiff's factual allegations as true, as we must at this early stage.

On March 9, 2026, Defendants filed the present Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and 8(a). ECF No. 19. Defendants argue that Dayspring is exempt from ADA coverage as a religious organization, that Plaintiff lacks standing to pursue injunctive relief, and that Plaintiff fails to plausibly allege liability under the RA because Dayspring did not receive qualifying federal financial assistance during the operative time period. *Id.* Defendants further contend that Plaintiff's state-law claims are preempted or otherwise fail as a matter of law. *Id.*

Plaintiff filed a response in opposition to Defendants' Motion to Dismiss on March 23, 2026, asserting that discovery is necessary regarding Dayspring's claimed religious exemption and alleged receipt of federal funds. ECF No. 20. Plaintiff further argued that the Complaint sufficiently pleads deliberate indifference and disability-based discrimination to withstand dismissal. *Id.* Defendants subsequently filed a reply memorandum in further support of their Motion to Dismiss. ECF No. 21. Plaintiff then filed a sur-reply on April 2, 2026. ECF No. 29. On April 8, 2026, the Court received a request for oral argument, which it granted on April 10, 2026. ECF No. 30. The Court thereafter held oral argument on Defendants' Motion to Dismiss on April 28, 2026. ECF No. 32.

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement,

3

it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## IV.    ANALYSIS

### A.  ADA Claim
#### 1.  Religious Organization Exemption

Title III of the ADA does not apply to "religious organizations or entities controlled by religious organizations." 42 U.S.C. § 12187. Defendants contend that Dayspring falls within this exemption because it is a nonprofit Christian school whose mission, curriculum, and operations are grounded in religious principles. ECF No. 19 at pp. 4–7. In support of this position, Defendants rely on Dayspring's governing documents, student handbook, curriculum, admissions materials, and public-facing statements emphasizing Biblical instruction and Christian discipleship. *Id.* at pp. 6–7.

Plaintiff responds that the applicability of the religious-organization exemption cannot be resolved on a motion to dismiss, asserting that discovery is necessary regarding Dayspring's governance structure, its relationship to any organized religion, and its receipt of public funding. ECF No. 20 at pp. 3–6. Plaintiff alleges that Dayspring is governed by an independent board of trustees rather than a particular church or denomination, and therefore argues that the Court should defer resolution of the exemption issue until a factual record has been developed. *Id.* at p. 5.

4

The Third Circuit has instructed that whether an entity qualifies as a religious organization requires a fact-intensive inquiry considering the totality of the circumstances. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 226–27 (3d Cir. 2007). Relevant considerations include the entity's stated purpose, ownership and control, affiliation with a church or denomination, religious activities, and the extent to which religion permeates its operations. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 226 (3d Cir. 2007) (stating factors courts have considered are: "(1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.").

The Court acknowledges that Defendants have presented substantial evidence suggesting that Dayspring possesses a significant religious character. At the same time, Plaintiff has plausibly alleged facts bearing upon several *LeBoon* factors, including assertions concerning Dayspring's governance structure, institutional independence, and participation in governmental educational programs. ECF No. 19 at pp. 4–5.

Moreover, the parties' submissions and oral argument highlight factual disputes concerning the significance of Dayspring's handbook, its governance model, and its relationship to organized religion. *See generally* ECF Nos. 19–20, 26, 29, 32. Because the religious-

organization inquiry is highly fact-specific, and because the Court must construe the allegations in the light most favorable to Plaintiff at this stage, the Court concludes that dismissal based upon the religious-organization exemption would be premature.

### 2. Availability of Relief Under Title III

Although the Court declines to dismiss the ADA claim based upon the religious-organization exemption, the Court nevertheless concludes that Plaintiff cannot proceed under Title III because he lacks standing to pursue the only form of relief available under the statute.

It is well established that Title III of the ADA authorizes only prospective injunctive relief and does not permit recovery of compensatory or punitive damages. *See Bowers v. Nat'l Collegiate Athletic Ass'n,* 346 F.3d 402, 433 (3d Cir. 2003). Accordingly, Plaintiff may proceed under Title III only if he plausibly alleges an entitlement to prospective equitable relief.

Plaintiff argues that compensatory damages remain available because the Complaint alleges deliberate indifference and intentional discrimination. The Court disagrees. While a showing of deliberate indifference may support an award of compensatory damages under Section 504 of the Rehabilitation Act, *see D.E. v. Cent. Dauphin Sch. Dist.,* 765 F.3d 260, 269 (3d Cir. 2014), Title III of the ADA authorizes only prospective injunctive relief. *See Bowers*, 346 F.3d at 433. Thus, even accepting Plaintiff's allegations of deliberate indifference as true, such allegations do not expand the remedies available under Title III or permit recovery of compensatory damages.

To establish standing for injunctive relief, a plaintiff must demonstrate a real and immediate threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105 (1983). Past exposure to allegedly unlawful conduct, standing alone, is insufficient. *See Yarmey v. Univ. of Pa.*, No. 20-5535, 2024 WL 4803734, at *7 (E.D. Pa. Nov. 15, 2024) (citing *Kitchens v. United States Med. Licensing Exam*, No. 22-3301, 2023 WL 7230400, at *17–18 (E.D. Pa. Oct. 31, 2023)

(finding that, under Title III of the ADA, expungement of past test scores could not constitute "preventive injunctive relief" and instead sought to ameliorate the lingering effects of past discrimination)). Rather, the plaintiff must show a likelihood of future harm that is actual and imminent, not conjectural or hypothetical. *See Pineda v. Lake Consumer Prods., Inc.*, 812 F. Supp. 3d 493, 500 (E.D. Pa. 2025) ("[a] plaintiff pursing standing for injunctive relief must demonstrate a future injury that is realistic, sufficiently real and immediate – not speculative, conjectural or hypothetical.") (citation omitted).

Here, Plaintiff's allegations concern conduct that occurred during his enrollment at Dayspring. *See generally* ECF No. 1. The Complaint acknowledges that Plaintiff has since graduated from the school. *See id.* at ¶ 21 (stating Plaintiff graduated in the Spring of 2025). Plaintiff seeks declaratory and injunctive relief relating to Dayspring's policies, practices, supervision, and training. *Id.* at p. 12. However, the Complaint does not plausibly allege that Plaintiff faces a real and immediate threat of future discrimination by Dayspring, as required to establish standing to pursue prospective relief under Title III.

Plaintiff argues that he may continue to attend extracurricular activities or other events associated with the school. ECF No. 20 at p. 8. Such allegations are too speculative to establish standing to seek prospective relief. The mere possibility that Plaintiff may choose to attend future events at Dayspring does not create the sort of imminent and concrete injury required to establish injunctive relief under Title III.

Because Plaintiff has graduated from Dayspring and has not plausibly alleged a likelihood of future discrimination, he lacks standing to pursue prospective relief under Title III. Moreover, because compensatory and punitive damages are unavailable under the statute, no viable remedy remains available under Plaintiff's ADA claim.

Accordingly, Count I will be dismissed with prejudice, as amendment would be futile.

### B.  Rehabilitation Act Claim

To state a claim under Section 504 a plaintiff must allege facts showing that: (1) he is an "individual with a disability" as defined under the statute; (2) he is "otherwise qualified" for participation in the program or the benefit denied; (3) the program receives "federal financial assistance"; and (4) he was "excluded from the participation in," "denied the benefits of," or "subjected to discrimination" in the program "solely by reason of her or his disability." 29 U.S.C. § 794(a); *see also Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991)

Defendants argue that Dayspring did not receive federal financial assistance during the relevant period. ECF No. 19 at pp. 9–10. Plaintiff however, alleges that Dayspring received PPP funds and participated in programs involving public educational funding. ECF No. 20 at pp. 9–10.

Defendants further contend that any PPP funding was received and forgiven before many of the events alleged in the Complaint, and therefore cannot support liability under Section 504 of the Rehabilitation Act. ECF No. 19 at pp. 10–11. Plaintiff responds that the Complaint alleges a continuing course of conduct spanning several years, and that the precise timing, scope, and legal significance of Dayspring's funding relationship cannot be resolved on the pleadings. ECF No. 20 at pp. 9–10.

The Court agrees with Plaintiff. At this stage, the Court cannot resolve factual disputes concerning the timing and effect of any federal financial assistance. Accepting the allegations as true, Plaintiff has plausibly alleged that Dayspring received federal financial assistance during portions of the relevant period, sufficient to state a claim under Section 504.

Accordingly, dismissal on this ground is inappropriate, and Defendants' Motion is denied as to this claim.

#### 1.  Deliberate Indifference

8

Plaintiff seeks compensatory damages under the RA based upon a theory of deliberate indifference. *Id.* at pp. 10–12. "Where a plaintiff . . . seeks compensatory damages as a remedy for violations of the [Rehabilitation Act] . . .it is not enough to demonstrate only that the plaintiff has made out the prima facie case outlined above . . .  [h]e or she must also demonstrate that the aforementioned discrimination was intentional. . . A showing of deliberate indifference satisfies that standard." *Cent. Dauphin Sch. Dist.*, 765 F.3d at 269 (citations omitted). To satisfy the deliberate indifference standard, a plaintiff "must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated ..., and (2) failure to act despite that knowledge." *Id.* (citations omitted).

The Complaint alleges that Dayspring administrators and staff received repeated notice over multiple years that Plaintiff and other disabled students were being subjected to bullying, harassment, and physical mistreatment. ECF No. 1 ¶¶ 32–34. Plaintiff further alleges that school officials knew that students in the disability classroom were being targeted yet failed to implement effective corrective measures. ECF No. 20 at pp. 11–12.

Defendants argue that these allegations demonstrate, at most, imperfect or inadequate responses rather than deliberate indifference. ECF No. 19 at pp. 13–14. While discovery may ultimately reveal that school officials took responsive measures inconsistent with deliberate indifference, the Court must accept Plaintiff's allegations as true at this stage.

Construing the Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly alleged deliberate indifference sufficient to proceed beyond the pleading stage.

**2. Punitive Damages**

Punitive damages are unavailable under the RA as a matter of law. See *Barnes v. Gorman*, 536 U.S. 181 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under . . . § 504 of the Rehabilitation Act"). Accordingly, Plaintiff's request for punitive damages under the RA is dismissed with prejudice.

### 3. Equitable Relief

Defendants also argue that Plaintiff's graduation precludes any award of prospective equitable relief under the RA. ECF No. 19 at p. 16. The Court is not persuaded that dismissal of such relief is warranted at this stage of the proceedings. Again, at the pleading stage, the Court must construe the allegations in the light most favorable to Plaintiff, and the availability of prospective equitable relief under the RA may depend on factual issues that cannot be resolved at this stage.

Unlike Plaintiff's ADA claim, which rises or falls on the availability of prospective relief, the RA authorizes both equitable remedies and compensatory damages. *See, e.g.*, *W.M. v. Scranton Sch. Dist.*, No. 3:21-CV-01266, 2022 WL 4387876, at *6 (M.D. Pa. Sept. 22, 2022) ("It is well established that damages are not an available form of relief for a discrimination claim under Title III of the ADA."); *Doe v. Law Sch. Admission Council, Inc.*, 791 F. App'x 316, 319 (3d Cir. 2019) (same); *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 404 (M.D. Pa. 2019) (same); *Anderson v. Macy's Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (same); S.*H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (explaining that a plaintiff may recover compensatory damages under the RA upon a showing of intentional discrimination, which may be satisfied by deliberate indifference). Although Plaintiff's graduation may ultimately bear on the appropriateness and scope of any injunctive or declaratory relief, the present record is insufficient

10

to determine whether all forms of equitable relief are foreclosed as a matter of law. At the motion-to-dismiss stage, the Court must accept Plaintiff's factual allegations as true and draw reasonable inferences in his favor. *Dennis v. City of Phila.*, 19 F.4th 279, 284 (3d Cir. 2021).

Moreover, the precise nature of any prospective relief that may be available under the RA cannot be meaningfully assessed absent further factual development. Discovery may clarify, among other things, the continuing effects of the alleged discrimination, the existence of any ongoing policies or practices, and whether any equitable remedy would remain appropriate notwithstanding Plaintiff's graduation.

Accordingly, the Court declines to dismiss Plaintiff's request for equitable relief under the RA at this time.

### C. Causation

Defendants argue that Plaintiff fails to plausibly allege discrimination "because of" disability. ECF No. 19 at pp. 16–17. The Court disagrees. Plaintiff alleges that he attended a classroom specifically designated for students with disabilities and that the harassment he endured was directed toward him because of his disabilities and perceived vulnerabilities. ECF No. 1 ¶¶ 26, 29(a), 34, 47. The Complaint further alleges that school officials were aware that disabled students in the classroom were being targeted and nevertheless failed to adequately intervene. *Id.* ¶ 34.

At the pleading stage, these allegations are sufficient to plausibly allege discrimination on the basis of disability.

### D. State-Law Claims

11

Defendants also argue that Plaintiff's negligence and breach-of-contract claims should be dismissed because they are preempted by federal disability statutes or otherwise fail as a matter of law. ECF No. 19 at pp. 17–19.

The Court finds no basis for dismissal at this stage. Plaintiff's state-law claims arise from duties that are independent of federal statutory obligations and are not wholly duplicative of the federal claims. Because Plaintiff's RA claim survives dismissal, the Court will continue to exercise supplemental jurisdiction over the state-law claims.

Accordingly, Defendants' Motion to Dismiss the state-law claims is denied.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 19) is granted in part, and denied in part. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*

JOHN M. GALLAGHER
United States District Court Judge